The **WARNER BROTHERS COMPANY,** Plaintiff,

v.

**JANTZEN, Inc., Defendant.**

United States District Court
S. D. New York.

Dec. 31, 1956.

532

Harry R. Pugh, Jr., New York City, for plaintiff.  E. Cummings Sanborn, Fish, Richardson & Neave, New York City, of counsel.

Levisohn, Niner & Cohen, New York City, for defendant.  Harry Cohen, Edwin Levisohn, New York City, of counsel.

CASHIN, District Judge.

This is an action based upon trademark infringement and unfair competition in which an injunction, accounting and attorneys' fees are requested.  The defendant has counterclaimed, requesting cancellation of the allegedly infringed trademark, and attorneys' fees.

### Findings of Fact

1.  The plaintiff, a Connecticut corporation, has, since 1902 manufactured and sold, among other products, women's brassieres.  Commencing in December 1932 and continuing to the present time, the plaintiff has used the mark "A'Lure" to identify certain of its brassieres.  On December 30, 1932 the plaintiff applied for registration of the mark and on June 6, 1933 Certificate of Registration No. 303,763 was issued.  The registration was renewed on June 6, 1953.  The plaintiff is, and at all times since June 1933 has been the owner of the registration.  During the entire period commencing December 30, 1932 until the present, the brassieres identified by the registered mark have been sold in interstate commerce.

2.  The plaintiff has expended considerable sums of money in advertising the product in conjunction with the registered mark.  In the advertising, and in the utilization of the mark in identifying the product, notice had been given that the mark was registered.  As a result of the advertising and utilization of the mark for identification, the mark has become associated with the product of the plaintiff or, in other words, has become distinctive.

3.  The defendant, a Nevada corporation and large manufacturer of women's apparel, commenced the manufacture and sale of brassieres in 1949.  Previous thereto it had engaged in the sale of swim suits and all furnishings in connection therewith.  The word "Curvallure" was used by it in marketing its sale of swim suits and furnishings.  In 1953 it began to utilize the mark "Curvallure" in connection with some of its brassieres.  After receipt of a letter of protest from the plaintiff, but not necessarily because of such protest, the defendant discontinued the use of the mark.  However, in April 1955 the defendant once again began to utilize the mark and has continued to do so.  The present action was instituted on July 13, 1955.  The defendant has also expended considerable sums of money in advertising the product associated with the mark "Curvallure".

4.  The plaintiff has generally, but not exclusively, utilized the mark "A'Lure" in conjunction with another registered mark "Warner's".  The defendant's mark "Curvallure" has never been used alone but always in conjunction with its registered and widely known trademark consisting of the name "Jantzen" and a representation of a diving girl.

5.  The word "allure", and a fortiori the mark "A'Lure", is not descriptive of brassieres but rather is arbitrary and fanciful.

6. The mark "Curvallure" is not deceptively similar to the registered mark "A'Lure", that is to say, it is not likely to cause confusion in the mind of the average purchaser whether or not "Curvallure" is used in conjunction with the "Jantzen" trademark and "A'Lure" is used in conjunction with the "Warner's" trademark.

7. The word "allure" or coined words derived therefrom have, for a long period of years, been utilized as advertising for various types of feminine accoutrements such as girdles, bust pads, hosiery, swim suits, coats, sweaters, dresses, skirts, undergarments and the like, by both the defendant and other manufacturers.

### Conclusions of Law

I. The complaint is dismissed with costs to the defendant.

II. The counterclaim is dismissed.

III. Attorneys' fees are not recoverable.

### Discussion

The defendant contends that the words "lure" and "allure" embodied in or suggested by the plaintiff's mark, are merely descriptive of the product sold and thus not capable of appropriation as a valid trademark. It is obvious, however, that the product in itself is not a "lure" nor is it "alluring". While a "lure", in the sense of a decoy, is a tangible product which can be purchased, it cannot seriously be contended that the product herein involved is included in category of "lures". "Allure", when used as a noun, is an intangible quality possessed by women in varying degrees, and thus is not a marketable commodity. While the product in issue, when skillfully used, might result in an enhancement of the intangible quality of the particular woman using it, the product by itself does not possess the quality and thus the word "allure" is not descriptive. Although there was abundant evidence at the trial showing that the women's garment trade and its advertising agencies make extensive use of the literary device of metonymy to transfer to the product being purveyed the qualities which it is hoped will be engendered or improved in the wearer, utilization of this literary device cannot act to make descriptive a word which itself is not.

The mark "A'Lure", adopted by the plaintiff to identify its product has, however, become distinctive, that is, it has become identified in the public mind with the product of the plaintiff. Therefore, since the mark is not descriptive but is distinctive and has been utilized by the plaintiff, it is valid as a trademark and the registration will not be cancelled. Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629; Douglas Laboratories Corp. v. Copper Tan, Inc., 2 Cir., 1954, 210 F.2d 453, certiorari denied 347 U.S. 968, 74 S.Ct. 779, 98 L.Ed. 1109; Hughes v. Alfred H. Smith Co., D.C.S.D. N.Y.1913, 205 F. 302.

The question remains whether the valid trademark has been infringed by the defendant. Numerous cases have been cited by both plaintiff and defendant giving examples of pairs of somewhat similar marks which have been the subject of litigation. Considering only the reports of the cases apart from the record, it is impossible to harmonize the decisions. It is settled law, however, that in the long run " * * * the decision must rest on the Court's conviction as to possible confusion". Miles Shoes, Inc., v. R. H. Macy & Co., 2 Cir., 1952, 199 F.2d 602, 603, certiorari denied 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345.

In adopting its mark originally, the plaintiff did not merely use the word "allure" as ordinarily used in the English language. Rather, it made substantial changes in the word by dropping one of the "l's", capitalizing the second and inserting between what remained as the first two letters an apostrophe. This alteration of the visual aspect of the word effected also an alteration of the phonetic aspect by broadening and hardening the pronunciation of the first syllable and shifting thereto the accent which is ordinarily on the second syllable. The de-

**534**

fendant's mark, on the other hand, utilizes the ordinary word "allure" in its unaltered form but prefixes thereto the letters "Curv" to form a combination word. As a result of this combination the prefixed syllable becomes dominant, both visually and phonetically. Because of the material dissimilarity of the mark, both visually and phonetically, the possibility of confusion in the mind of the average purchaser is too remote to support a finding of infringement especially since the use of the word "allure", or coined words derived therefrom, is so widespread in the women's garment industry that no ordinary purchaser could possibly infer that all garments so described derive from a single source.

A decree, in accordance with the above, may be settled.