**The WARNER BROTHERS COMPANY, Plaintiff-Appellant,**

v.

**JANTZEN, Inc., Defendant-Appellee.**

**No. 42, Docket 24567.**

United States Court of Appeals Second Circuit.

Argued Oct. 10, 1957.

Decided Nov. 12, 1957.

Harry R. Pugh, Jr., New York City (E. Cummings Sanborn and Donald E. Degling, New York City, on the brief), for plaintiff-appellant.

Harry Cohen, of Levisohn, Niner & Cohen, New York City (Edwin Levisohn, of Levisohn, Niner & Cohen, New York City, on the brief), for defendant-appellee.

Before CLARK, Chief Judge, and LUMBARD and MOORE, Circuit Judges.

PER CURIAM.

■■ The plaintiff asks too much in seeking a private monopoly in the common word "allure" as applied to certain articles of feminine adornment and apparel. As the court found on competent evidence, this word or coined words derived therefrom "have, for a long period of years, been utilized as advertising for various types of feminine accoutrements such as girdles, bust pads, hosiery, swim suits, coats, sweaters, dresses, skirts, undergarments and the like, by both the de-fendant and other manufacturers." 150 F.Supp. 531, 533. Plaintiff relies on a trade-mark registered in 1932–33, but even then it betrayed some weakness in finding it necessary to embellish the common word to contrive the more fanciful "A'Lure" as the mark for its brassieres. But in so crowded a field of competitive advertising as that for the trade in women's goods, where rival claims are pressed continuously without let or pause over the air and through the printed page, it is not conceivable that consumers lack awareness of the existence of the trade rivalry involved. Nor, we apprehend, are there buyers still so naive as to regard the quite differing "A'Lure" and "Curvallure" brassieres as inevitably the product of a single manufacturer, even without the added factor found that defendant did not use its coined word alone, but always joined it with its own widely known trade-mark consisting of the name "Jantzen" and a representation of a diving girl. Insistent American advertising, whatever its faults, has surely induced a certain degree of sophistication and wariness in us all. Accordingly we agree with Judge Cashin's conclusion of noninfringement and accept his convincing opinion, D.C.S.D.N.Y., 150 F.Supp. 531, 533–534, as our own.

Affirmed.

LUMBARD, Circuit Judge (dissenting).

In my opinion the policy of our trade-mark laws, and the increasing awareness of the desirability of guarding the public against possible confusion regarding the origin of merchandise and at the same time protecting from commercial piracy the rights which the trademark laws are designed to create and protect, require that we resolve any doubts in favor of those who own and use valid trademarks. Warner Brothers should be protected in their right to use "A'Lure" in the promotion and sale of their brassieres; the public should not be subjected to the possible confusion which may be caused by Jantzen's use of "Curvallure" to sell their competing products.

Warner Brothers Company is the owner of the trademark "A'Lure" which it first registered for brassieres in 1933, and continued by renewal in 1953. It has used that mark since 1932. The District Court has found the mark to be valid, but it has ruled that it was not infringed by Jantzen's use of "Curvallure" in advertising and marketing its brassieres. Although Jantzen contested the validity of the trademark in the District Court there is no cross-appeal from this finding, which my brothers accept. Therefore the only question is whether the plaintiff's valid trademark was infringed.

Since the District Court rested its finding of non-infringement primarily on the visual and phonetic dissimilarities between the trademarks themselves, this Court need not accord the conclusions reached below as great weight as is ordinarily required. We "are in as good a position as the trial judge to determine the probability of confusion." Miles Shoes, Inc., v. R. H. Macy & Co., Inc., 2 Cir., 1952, 199 F.2d 602, certiorari denied 1953, 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345.

The similarity of "Curvallure" to the plaintiff's "A'Lure" is such as to make it probable that some prospective customers may be confused or deceived as to the source of the goods. While there is some phonetic dissimilarity, the similarity is significant. Both words are the products of the advertiser's imagination and they seek to benefit from a feminine predilection for French fashions by appearing to be French both visually and phonetically. See La-Touraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 1946, 157 F.2d 115, certiorari denied 1946, 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663. Both words apply to nearly identical products and both use the same root word "allure." The brassiere industry has many styles of a single product. Even if a customer should think that "Curvallure" and "A'Lure" identified different styles of brassieres, there is considerable possibility that the customer would believe that the two marks designate different styles from the same source.

Nor does the use of the word "Warner's" before "A'Lure" or the word "Jantzen's" before "Curvallure" appreciably diminish the likelihood of confusion. As this Court pointed out in Miles Shoes, Inc., v. R. H. Macy & Co., Inc., supra, "the fact that the goods on which the marks are affixed are identical, together with the additional fact that the two words are closely alike in sound, make confusion likely." There it was held that "Miles Gropals" infringed "Gro Shoe" even though this Court took note that the visual similarity might not be confusing.

Jantzen did not commence the sale of brassieres until 1949 or 1950. Having chosen late in the game to enter the brassiere field in which the plaintiff had been established since 1902, and in which it had used the trademark "A'Lure" since 1932, the defendant should be required "in the selection of a trade-name or trade-mark" to "keep far enough away to avoid all possible confusion." Northam Warren Corporation v. Universal Cosmetic Co., 7 Cir., 1927, 18 F.2d 774, 775.

Indeed in 1953 Jantzen gave up the use of "Curvallure" after receiving a protest from the plaintiff. There is no reason why Jantzen should have resumed the use of "Curvallure" in 1955 unless it thought to reap some of the benefits of the $680,000 which Warner's had expended in advertising that trademark for more than 20 years. Both the English and French languages are rich in synonyms and words of suggestive power as shown by "Plus Bra" and "Forever Uplift Bra" formerly used by Jantzen. Against this background we should resolve any possible doubt as to the likelihood of confusion and deception in favor of the plaintiff. Judge Learned Hand wrote in 1915 in Lambert Pharmacal Co. v. Bolton Chemical Corp., D.C.S.D.N.Y., 219 F. 325, 326:

"In choosing an arbitrary trade-name, there was no reason whatever why they should have selected one which bore so much resemblance to the plaintiff's; and in such cases any possible doubt of the likelihood of damage should be resolved in favor

of the plaintiff. \* \* \* There is always a fringe of possible customers, next year's for instance, with whom such opportunities are not to be disregarded, people who have heard vaguely the old name or seen it in advertisements and who fail to carry it with accuracy in their memory. Among these confusion is eminently possible, and that possibility, if not a remote speculation, is quite enough."

The views expressed in Lambert and Northam Warren, supra, have been re-enforced by authority and opinion in the intervening years. Judicial protection of trademarks is not static; it changes with changing concepts of commercial morality. Recent years have brought a pronounced tendency toward guarding even more jealously the rights vesting under the trademark laws in order better to protect the public. Thus the Lanham Act, 15 U.S.C.A. § 1051 et seq., passed by the Congress in 1946 and taking effect in July 1947, was designed to make more effective "the well-established rule of law protecting both the public and the trademark owner" in the language of the report of the Congressional Committees sponsoring this legislation. 1946 U.S. Code Congressional Service, p. 1274.

Judge Goodrich took note of the trend toward higher standards in Q-Tips Inc. v. Johnson & Johnson, 3 Cir., 1953, 206 F.2d 144, at page 145, certiorari denied 1953, 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377, where the Court held that the defendant's use of "Johnson's Cotton Tips" infringed plaintiff's registered trademark "Q-Tips," writing:

> "It is worth pointing out, at the start of our discussion, that we are in a field where the tendency of the law 'has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade. The tendency still persists.' Restatement, Torts, Volume III, page 540."

The enforcement of such higher standards is precisely what the facts of this case require. As it seems to me that the conclusion reached by my brothers ignores what I believe to be the salutary trend of the law, I vote to reverse the finding of non-infringement and to grant the relief prayed for by the plaintiff.