**ALUMINUM FABRICATING COMPANY OF PITTSBURGH and Season-All Sales Corp., Plaintiffs,**

v.

**SEASON–ALL WINDOW CORP., Defendant.**

United States District Court
S. D. New York.
Nov. 22, 1957.

Armand E. Lackenbach, New York City, for plaintiffs. Burton Perlman New York City, of counsel.

I. J. Ginsberg, New York City, for defendant. Edward Halle, New York City, of counsel.

CASHIN, District Judge.

This is an action by related Pennsylvania corporations against a New York corporation for trademark infringement, unfair competition, trade libel and apparently a prima facie tort. Jurisdiction is based upon the Trademark Laws of the United States (15 U.S.C.A. § 1051 et seq.) and diversity of citizenship. The defendant interposed defenses of invalidity of the trademark registration, statute of limitations, laches, acquiescence, estoppel, concurrent user and counterclaimed for cancellation of the registration (15 U.S.C.A. § 1119), injunctive relief, and for an accounting for profits because of plaintiffs' use of the mark and for damages resulting to defendant from the fraudulent registration of the mark (15 U.S.C.A. § 1120).

### Findings of Fact

1. Plaintiff, Aluminum Fabricating Company of Pittsburgh (hereafter "Aluminum") is a corporation duly organized

under the laws of the State of Pennsylvania, having been incorporated on November 8, 1947 for the purpose of engaging in the manufacture and sale of aluminum storm doors and aluminum storm windows. This corporation is the successor of an unincorporated group which, since sometime in 1946, had carried on the same business.

2. Plaintiff, Season-All Sales Corp., was organized under the laws of the State of Pennsylvania on March 25, 1951. Season-All Sales Corp. is wholly owned by the shareholders of Aluminum and both corporations have common officers and boards of directors.

3. Defendant, Season-All Window Corp. was organized as a New York corporation on November 3, 1948 also for the purpose of manufacturing and selling aluminum storm doors and aluminum storm windows.

4. On April 5, 1951, Aluminum applied for registration of the mark "Season-all" under the Lanham Act (Act of July 5, 1946), alleging first trademark use and first use in commerce on July 5, 1947. Registration No. 556,390 was issued on March 18, 1952. At the time of the application, neither Gorell, who executed the application on behalf of Aluminum, nor anyone else connected with Aluminum, had knowledge of the use of the notation "Season-all" to identify similar products by any other entity.

5. Frank Gorell, presently President and a principal stockholder of both plaintiff corporations, was a member of the group which originated the business and which later became the "Aluminum" corporation. At the outset of the business, Gorell, in an individual capacity, was the distributor for Aluminum in the New York area, conducting his business principally in Westchester County from an office in New Rochelle, New York. Gorell later incorporated under his own name and continued the business.

6. During the time that Frank Gorell, under his individual and corporate capacity, was the New York distributor for Aluminum he contracted with a Kaytrim Moulding Corporation for the instal-

lation of the products which were sold. Bertram L. Kantor, president of the defendant herein, was the President and principal of Kaytrim and was an officer of Frank Gorell Co. Inc. In November of 1947, Frank Gorell changed his residence to Pittsburgh and Bertram L. Kantor assumed active control of the operation of Frank Gorell Co. Inc.

7. In October of 1948 the Gorell corporation ceased operations. In connection with such cessation, Kantor resigned from the office of Treasurer of the corporation; the outstanding contracts of the Gorell corporation were assigned to Kantor, individually, and assumed by him; "title to the office furniture and equipment" in the office of the Frank Gorell Co. Inc. was transferred to Kaytrim Moulding Corporation, and Kantor and Kaytrim Moulding Corporation gave general releases to Frank Gorell, individually, and Frank Gorell Co. Inc.

8. When Frank Gorell moved to Pittsburgh in November of 1947 he became active in the management of Aluminum, and has continued to be so active.

9. The mark "Season-all", when used to identify aluminum storm doors and storm windows which may be utilized throughout the year, is not merely descriptive but rather is arbitrary and fanciful.

10. Aluminum, prior to its application for registration of the mark "Season-all", utilized it in displays associated with the goods identified by the mark and the said goods were sold or transported in interstate commerce. The initial interstate transportation of the goods with which the mark had been associated in displays was at least as early as the time certified to in the application for registration, namely, September 25, 1947. Displays utilizing the mark in connection with the goods were conducted at least as early as October 1947.

11. Bertram L. Kantor was aware of use of the mark "Season-all" by Aluminum prior to his incorporation of the defendant corporation on November 3, 1948.

12. Frank Gorell, in 1949, was aware of the use by the defendant of the mark "Season-all" in connection with goods not emanating from Aluminum.

13. Plaintiffs first attempted to re-enter the New York, New Jersey, Connecticut market in 1950 or 1951.

14. While Aluminum protested defendant's use of the name "Season-all" in 1952, no further steps were taken to prevent defendant's use of the name until the institution of this action in November of 1955.

15. Defendant's first attempt to become active outside of the New York, New Jersey, Connecticut area occurred in May of 1955 when defendant advertised in a national magazine under the name "Season-all".

16. Defendant, since 1952, has ceased utilization of the term "Season-all" as a trademark, but continues to use it in its corporate name and in its advertising.

17. The utilization of the notation "Season-All" in the defendant's corporate name and in the advertising of defendant's products is likely to cause confusion between plaintiffs' and defendant's goods in the minds of the average purchaser.

Conclusions of Law

I. The trademark "Season-all" is a valid technical trademark owned by Aluminum.

II. Defendant should be enjoined from further utilization of the name "Season-All" and in connection therewith should effect a change in its corporate name, and deliver up for destruction all infringing material in its possession or control.

III. Plaintiffs' Third and Fourth causes of action should be dismissed.

IV. Defendant's counterclaims should be dismissed.

V. An accounting for damages and profits is denied.

VI. Plaintiffs are awarded costs but attorneys' fees are denied.

The first question raised for consideration is whether the notation "Season-all" is capable of appropriation as a valid technical trademark. The resolution of this question turns on whether the notation is merely descriptive of the article to be identified or whether it is fanciful and arbitrary so as to be capable of identifying the goods with which it is associated as emanating from a particular source. It is true that the notation suggests a desirable result to be obtained by the purchase of the product being purveyed, i. e., the use of the product throughout all of the seasons of the year. The mere suggestion of such desirable result does not deprive the notation of the requisite fancifulness in the manner in which it is used. So, e. g., the notation "Stronghold" for nails has been held a valid trademark when used in connection with nails, (Independent Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc., 7 Cir., 1953, 205 F.2d 921) and "A'Lure" as applied to brassieres has been held similarly valid (Warner Brothers Company v. Jantzen, Inc., D.C.S.D.N.Y.1956, 150 F.Supp. 531, affirmed 2 Cir., 1957, 249 F.2d 353). It would serve no purpose to cite numerous cases with similar holdings. Suffice it to say, paraphrasing the words of the Court in Independent Nail & Packing Co., Inc., v. Stronghold Screw Products Inc., supra [205 F.2d 925], that—

"Although the word ["Season-all"] is suggestive of one of the attributes of plaintiffs' [storm doors and storm windows], it is not descriptive of [a storm door or a storm window], let alone that type [of storm door or storm window]. A person unaware of the particular product or the manufacturer, upon seeing or hearing the name ["Season-all"] would find it virtually impossible to identify the product to which it might have been applied. The label ["Season-all"] on a carton, with no other words to designate the contents, would never reveal that such contents were [storm doors or storm windows] of a particular type."

Since the notation in issue is not merely descriptive of the products of the plaintiffs and is, therefore, capable of identifying their source, it is capable of appropriation as a technical trademark.

Since it has been determined the notation "Season-all" is capable of appropriation as a trademark, the next question is whether Aluminum so appropriated it and properly registered it. The arguments raised against its proper appropriation and registration are that the mark was originally coined by Bertram L. Kantor and that no valid trademark use was made of the mark prior to its registration. It is unnecessary to determine which of the conflicting claimants to the authorship of the name, Bertram L. Kantor or Clarence Garber, is, in fact, entitled to pride of authorship. Even if it were determined that Kantor originated the idea of identifying the products of Aluminum with the name "Season-all", there can be no doubt, in the circumstances under which any such authorship might have occurred, that the coining of the term was for the benefit of Aluminum. Kantor, at the time, was in the business of installing products manufactured by Aluminum. He later was connected with displays in which the mark was used as Aluminum's. He signed documents as an officer of Frank Gorell Co. Inc., which made it clear that the name was utilized by Aluminum. The only conclusion that can be drawn from these facts is that Kantor, even if he had authored the term, nevertheless, had done so on behalf of Aluminum.

Defendant argues that no trademark use of the notation was made prior to application for registration. It is true that the only proof of the affixation of the mark to the goods themselves, or their containers, prior to application for registration was the testimony of Frank Gorell, unsupported by any documentary evidence, and the application for registration itself. It was conclusively shown, however, that the mark was used in connection with displays of Aluminum's products. Defendant contends that the display use is not a valid trademark use

since no sales resulted directly from such displays. Thus, defendant argues the display use is tantamount to advertising and thus not a trademark use in connection with goods as distinguished from services.

The words of the Statute and the realities of business operations do not, however, support so strained a construction. A trademark is entitled to registration if used in commerce. (15 U.S.C.A. § 1051). It is used in commerce "on goods when it is placed in any manner on the goods or their containers or the displays associated therewith * * * *and* the goods are sold or transported in commerce * * *". (Emphasis supplied.) 15 U.S.C.A. § 1127. The use of the conjunction "and" implies that the display and sale need not be contemporaneous. In businesses such as the one involved herein, the usual relationship between the seller and consumer entails not only a contract of sale but also of installation. Thus, the requirement argued for by defendant where the display is "so closely associated with the sale of the goods that it indicates the origin of the goods as, for example, a counter display at a point of retail sale where the purchaser would purchase a product out of a box on which the trademark of the manufacturer was imprinted", would be impossible in such a situation as here presented. Displays were presented for the purpose of inducing prospective customers to purchase plaintiffs' goods. The notation "Season-all" was used in connection therewith. Sales subsequently took place where the goods sold moved in commerce. This literal compliance with the statutory provisions is a valid trademark use and entitled the mark to registration. Direct proof that any sale was induced by the display is no more necessary than direct proof of inducement by an affixed mark would have been prior to the Lanham Act. While the interpretation is not necessarily adopted, it might be well to note that one commentator reads the Lanham Act to authorize registration of a mark even though goods in connection with which

it is used are not sold at all but merely transported across state lines. Commentary on the Lanham Trademark Act by Daphne Robert, 15 U.S.C.A. pp. 265, 268–269.

A further argument raised by the defendant is that whatever rights existed in the trademark were assigned to it or to Bertram L. Kantor at the time Frank Gorell Co. Inc. ceased operations. Not only does the documentary evidence submitted in support of an inference of such an assignment fail utterly to effect that result, but the fact that the trademark was owned not by Gorell, individually, or the Gorell corporation, but rather by plaintiff, Aluminum, renders impossible any such assignment.

■ Defendant's right to use the mark in its own area of operations concurrent with plaintiffs' right to use the mark in other areas, recognized at common law (United Drug Company v. Theodore Rectanus Company, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Hanover Star Milling Company v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713) and codified in the Lanham Act (15 U.S.C.A. §§ 1051(a) (1); 1067; 1115(b) (5)) cannot be recognized under the circumstances existing in this case. Both prior to and under the Lanham Act the party seeking to limit the registered owner's rights must have adopted the mark prior to the publication of the registered mark and without knowledge of the registrant's prior use. As has been previously indicated, Bertram L. Kantor well knew of Aluminum's prior use of the mark. Thus, the defense of concurrent user is unavailable.

■ Remaining only for consideration is whether the equitable defenses of acquiescence, estoppel and laches should bar the relief otherwise available to plaintiffs because of the existence of technical trademark rights. A mere statement of the essential facts will indicate that the equities herein are all in favor of plaintiffs. Aluminum adopted and utilized the mark "Season-all" not only to the knowledge of the defendant's principal but with his personal partici-

pation. Although Aluminum discontinued operations in the New York area in October of 1948, it did not go out of business completely. It can hardly be doubted that Bertram L. Kantor knew that some business operations of Aluminum were to continue. He must similarly have been aware of the fact that, if those operations were successful, it would attempt at some future date to reenter the lucrative New York market. In adopting as a corporate name the mark previously utilized by Aluminum, defendant was taking a calculated risk that Aluminum would not later reenter the New York market and compete. The aid of a court of equity should not be invoked on behalf of one who lost such a gamble.

■ Even though it has been found that Frank Gorell knew of the use of the mark "Season-all" on goods not emanating from plaintiffs as early as 1949, this finding will not defeat plaintiffs' right to injunctive relief. Plaintiffs' delay in bringing suit is excusable because of lack of competition between the parties at the time knowledge of infringement first came to Gorell. As a matter of fact, at least three District Court decisions have held that relief is not available under the Lanham Act against one who, as the defendant herein for most of the period of delay, was engaged in a local business, even though the local business might, to some extent, affect interstate commerce. Libby, McNeill & Libby v. Libby, D.C. Mass.1952, 103 F.Supp. 968; R. P. Hazzard Co. v. Emerson's Shoes, Inc., D.C. Mass.1950, 89 F.Supp. 211; Samson Crane Co. v. Union National Sales, Inc., D.C.Mass.1949, 87 F.Supp. 218, affirmed 1 Cir., 180 F.2d 896. To hold plaintiffs guilty of laches for failing to institute a suit which the courts have held would have been futile, would produce a ludicrous result.

Plaintiffs were not competing with the defendant at the time within defendant's area of operations. Therefore, there appears to be no need for an accounting.

Plaintiffs introduced no substantial evidence in support of the Third and

Fourth causes of action and so must be deemed to have abandoned them. Since damages are not being granted, the defense of the statute of limitations is not available.

Settle decree.