**U.S. GOLD & SILVER INVESTMENTS, INC., an Oregon corporation, Plaintiff,**

v.

**DIRECTOR, UNITED STATES MINT, and J. Aron & Company, a New York partnership, Defendants.**

**Civ. No. 86–162–FR.**

United States District Court, D. Oregon.

June 23, 1987.

Thomas G.P. Guilbert, Portland, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Craig J. Casey, Asst. U.S. Atty., Portland, Or., for defendant U.S. Mint.

N. Robert Stoll, Stoll & Stoll, P.C., Portland, Or., Melvin A. Brosterman, Stroock & Stroock & Lavan, New York City, for defendant J. Aron & Co.

## OPINION

FRYE, Judge:

In the matter before the court, defendant J. Aron & Company (J. Aron) moves the court for an order granting summary judgment in its favor as to all claims asserted against it by plaintiff, U.S. Gold & Silver Investments, Inc.

## BACKGROUND

In 1978, Congress, through the American Arts Gold Medallion Act, P.L. 95–630, Title IV, directed the United States Mint to produce and sell gold medallions each year for five years in order to honor Americans who have contributed to the arts. The medallions were coined and sold, but after two years of low sales, the United States Mint sought bids from private contractors to market the medallions. Defendant J. Aron was awarded the contract in December, 1982. J. Aron marketed the gold medallions with the words "U.S. Gold" accompanied by the letters "TM." The letter "o" in the word "Gold" was a picture of a gold medallion.

In June, 1983, U.S. Gold & Silver Investments, Inc. sent a letter to the President of the United States, with a copy to the Director of the United States Mint, apprising them that it had exclusive rights to the trademark "U.S. Gold." In March, 1985,

U.S. Gold & Silver Investments, Inc. filed a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*, with the United States Mint. The United States Mint rejected the claim. U.S. Gold & Silver Investments, Inc. then filed this suit.

U.S. Gold & Silver Investments, Inc. brings this action against J. Aron under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), alleging that J. Aron infringed its trademark "U.S. Gold & Silver" by marketing gold medallions under the name "U.S. Gold." J. Aron asserts that it is entitled to summary judgment pursuant to Fed.R.Civ.P. 56 because U.S. Gold & Silver Investments, Inc. has not and cannot establish an infringement of its trademark.[1] J. Aron relies upon the deposition of Lawrence Heim, the president and principal shareholder of U.S. Gold & Silver Investments, Inc. U.S. Gold & Silver Investments, Inc. asserts that summary judgment is not appropriate and that genuine issues of fact exist as to infringement.

### UNDISPUTED FACTS

U.S. Gold & Silver Investments, Inc. has been in business since 1974. Lawrence Heim is the president and principal shareholder of the company. Substantially all of U.S. Gold & Silver Investments, Inc.'s business stems from the sale of bullion coins to customers on a retail basis. A bullion coin is a coin, the selling price of which is based on the value of the gold content of that coin rather than its collector value, as with a numismatic coin.

Over the years, most of U.S. Gold & Silver Investments, Inc.'s customers have purchased bullion coins from U.S. Gold & Silver Investments, Inc. by placing orders over the telephone. Almost all of the business of U.S. Gold & Silver Investments, Inc. has involved the drop shipment of coins to customers. Typically, a customer will telephone U.S. Gold & Silver Investments, Inc. and place an order for a specific coin or quantity of coins. The customer will then send payment to U.S. Gold & Silver Investments, Inc. which, in turn, will send the money to a wholesaler who will send the product ordered directly to the customer. U.S. Gold & Silver Investments, Inc. itself keeps little or no inventory. The majority of U.S. Gold & Silver Investments, Inc.'s customers, while not experts, know what form of coins they are buying and shop around for prices before they buy. The remaining customers are more interested in getting a quantity of bullion at a particular price than they are interested in the form or type of coinage in which the bullion is contained.

U.S. Gold & Silver Investments, Inc. has, for several years, maintained a telephone number listed under the name U.S. Gold & Silver Investments, Inc. in the 800 directory. For the years 1974 through 1984, U.S. Gold & Silver Investments, Inc. spent a total of $33,000 on advertising. In 1974 and 1983, U.S. Gold & Silver Investments, Inc. spent nothing on advertising, and the largest amount it ever spent was $7,642 in 1984. U.S. Gold & Silver Investments, Inc. has never advertised itself as "U.S. Gold." U.S. Gold & Silver Investments, Inc. has never used business cards with the name "U.S. Gold," has never had any promotional literature using the name "U.S. Gold," and does not have a "piece of paper any place which was generated or prepared by or for U.S. Gold & Silver Investments Inc.... which uses the term 'U.S. Gold' to relate to U.S. Gold & Silver Investments Inc." (Heim Depo. Vol. II, p. 55).

According to Heim, U.S. Gold & Silver Investments, Inc.'s president, he could not identify a single specific individual who ever referred to U.S. Gold & Silver Investments, Inc. as "U.S. Gold." Furthermore, Heim stated in his deposition that the term "U.S. Gold" had been used by U.S. Gold & Silver Investments, Inc. "only in ordinary conversation or ordinary notes," none of which notes had been kept. (Heim Depo. Vol. II, p. 57).

Coin dealers on some regular basis put advertisements in "Coin World," a tabloid

---

1. The mark "U.S. Gold" is not registered to U.S. Gold & Silver Investments, Inc. under 15 U.S.C. § 1115. Therefore, U.S. Gold & Silver Investments, Inc. is not entitled to a presumption that it has an exclusive right to the mark.

in the numismatic industry in which the term "U.S. Gold" is used to signify gold coins minted by the United States in the latter part of the nineteenth century and early part of the twentieth century. In addition, the term "U.S. Gold" is widely used by coin dealers in advertisements to refer to gold coins minted in the United States in the latter part of the nineteenth century and early part of the twentieth century.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to demonstrate the absence of a genuine issue as to any material fact. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 106 S.Ct. at 2553, citing Fed.R.Civ.P. 56(e). Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Id.* All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Finally, when different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136 (9th Cir. 1981).

## CONTENTIONS OF THE PARTIES

J. Aron asserts that U.S. Gold & Silver Investments, Inc. cannot establish a protectible interest in the mark allegedly infringed because the term "U.S. Gold" falls into the descriptive category of terms with respect to legally protectible interests. This requires U.S. Gold & Silver Investments, Inc. to establish a secondary meaning to the term in order to establish a protectible interest. J. Aron asserts that U.S. Gold & Silver Investments, Inc. has come forward with no facts to suggest that the term "U.S. Gold" has achieved a secondary meaning other than Heim's self-serving and conclusory statement in his affidavit that "the corporation was known to its customers and competitors colloquially as 'U.S. Gold.'" (Affidavit of Lawrence H. Heim, ¶ 3). J. Aron asserts that Heim's statement is not sufficient to defeat summary judgment against U.S. Gold & Silver Investments, Inc.

U.S. Gold & Silver Investments, Inc. asserts that "U.S. Gold" is not a descriptive term as applied to a business but a suggestive term for which no showing of secondary meaning is necessary. In addition, U.S. Gold & Silver Investments, Inc. asserts that even if the term "U.S. Gold" is descriptive, it is entitled to a trial to prove that the term has acquired a secondary meaning.

## ANALYSIS

Section 43(a) provides in pertinent part:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, *a false designation of origin*, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be trans-

ported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a) (1987) (emphasis added).

In order to succeed under section 43(a), U.S. Gold & Silver Investments, Inc. must plead and prove a protectible interest in the mark allegedly infringed. The cases have identified four categories of terms with respect to trademark protection: 1) generic, 2) descriptive, 3) suggestive, and 4) arbitrary or fanciful. The lines of demarcation are not always clear. The different categories are summarized as follows in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir.1976):

A "generic" term is one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species. It cannot become a trademark under any circumstances. *Abercrombie & Fitch, supra*, 537 F.2d at 9–10.

A merely "descriptive" term specifically describes a characteristic or ingredient of an article or service. It can, by acquiring a secondary meaning, i.e., becoming "distinctive of the applicant's goods", become a valid trademark. *Id.* at 10.

A "suggestive" term suggests rather than describes an ingredient, quality, or characteristic of the goods and requires imagination, thought, and perception to determine the nature of the goods. A suggestive term is entitled to registration without proof of secondary meaning. *Id.* at 10–11.

An "arbitrary or fanciful" term is usually applied to words invented solely for their use as trademarks and enjoys all the rights accorded to suggestive terms—without the need of debating whether the term is "merely descriptive" and with ease of establishing infringement. *Id.* at 11.

*See Surgicenters of America v. Medical Dental Surgeries*, 601 F.2d 1011, 1014–15 (9th Cir.1979).

J. Aron claims that the trade name "U.S. Gold" is a descriptive term because it communicates literally the nature of the goods and services offered—that is, the sale of gold minted in the United States. J. Aron argues that the name requires no mature thought or multi-stage reasoning process to determine the nature of the goods and cannot be said to be a suggestive term.

U.S. Gold & Silver Investments, Inc. concedes that the name "U.S. Gold" is a descriptive term as applied to a specific class of numismatic coins, that is, coins minted in the United States in the latter part of the nineteenth century and early part of the twentieth century but asserts that it is not a descriptive term as applied to a business. U.S. Gold & Silver Investments, Inc. asserts that as applied to its business the term "U.S. Gold" only suggests rather than describes the business.[2]

The determination of a mark's status is a question of law for the court. In discussing the difference between a "suggestive" term and a "descriptive" term, the court in *Abercrombie & Fitch Co.* quoted from *Stix Products, Inc. v. United Merchants & Manufacturers Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968):

A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.

---

**2.** U.S. Gold & Silver Investments, Inc. states in its memorandum in opposition to J. Aron's motion for summary judgment that the deposition of its principal shareholder and president, Lawrence Heim, was not completed and was to be continued. However, U.S. Gold & Silver Investments, Inc. has not asked this court for leave to complete the deposition before consideration of J. Aron's motion and does not claim to be prejudiced by the incomplete deposition. Furthermore, U.S. Gold & Silver Investments, Inc. has supplemented Heim's deposition with an affidavit which presumably presents any facts that may not have come out in the deposition.

In applying this test, courts have made the following determinations: "Surgicenter," referring to centers for surgery, is a descriptive term. *Surgicenters of America v. Medical Dental Surgeries*, 601 F.2d 1011 (9th Cir.1979). "Computerland" is descriptive. *Computerland Corp. v. Microland Computer Corp.*, 586 F.Supp. 22 (N.D.Cal.1984), *dismissed with prejudice*, 592 F.Supp. 1252 (N.D.Cal.1984). "Slickcraft" is a suggestive mark when applied to boats. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir.1979). "Alure" is suggestive for brassieres. *Warner Brothers Co. v. Jantzen, Inc.*, 150 F.Supp. 531 (S.D.N.Y.1956), *aff'd*, 249 F.2d 353 (2d Cir. 1957).[3]

The court concludes that the term "U.S. Gold" is a descriptive term. The term conveys forthwith without the use of imagination, thought or perception an immediate idea of the character of the goods offered for sale.

In order to establish a protectible interest in the mark "U.S. Gold," U.S. Gold & Silver Investments, Inc. is required to prove that it has acquired a secondary meaning such that the consuming public connects the mark with U.S. Gold & Silver Investments, Inc. rather than the product. *Carter–Wallace, Inc. v. Proctor & Gamble Company*, 434 F.2d 794 (9th Cir.1970). In order to determine whether a secondary meaning has been established, the court will consider these factors: the amount and nature of U.S. Gold & Silver Investments, Inc.'s advertising of the mark, the length of time and manner in which the mark has been in use, the exclusivity of the use, and the amount of goods and services sold under the mark. The court's purpose in examining these factors is to determine whether the mark in question denotes a single product coming from a single source to the members of the public. *See Sykes Laboratory, Inc. v. Kalvin*, 610 F.Supp. 849, 862 (D.C.Cal.1985). These factors relate specifically to the likelihood of confusion among customers, an important indicia of secondary meaning.

The deposition testimony of Heim submitted by J. Aron establishes that U.S. Gold & Silver Investments, Inc. has never advertised itself as "U.S. Gold"; that U.S. Gold & Silver Investments, Inc. has not used the mark "U.S. Gold" on any identifying paper such as business cards, stationary, promotional literature, or informal memorandum; that U.S. Gold & Silver Investments, Inc. cannot identify a single specific investor who identified it by the name "U.S. Gold"; that the amount of money spent by U.S. Gold & Silver Investments, Inc. in advertising from 1974 through 1984 was $33,000; that U.S. Gold & Silver Investments, Inc. spent none of this money advertising its business under the name "U.S. Gold"; and that the term "U.S. Gold" has a general meaning to coin dealers of gold coins minted in the United States in the latter part of the nineteenth century and early part of the twentieth century. This evidence negates the existence of a secondary meaning. In order to defeat J. Aron's claim that summary judgment in its favor is appropriate, U.S. Gold & Silver Investments, Inc. must come forward with specific facts showing that there is a genuine issue of material fact for trial regarding the likelihood of confusion among its customers or potential customers.

U.S. Gold & Silver Investments, Inc. has submitted the affidavit of its president, Lawrence Heim. Heim states in relevant part:

From 1974 through 1983, although the full corporate name of my corporation was then, as now, "U.S. Gold & Silver Investments, Inc," the formal corporate name was too long for everyday use. For that reason, the corporation was known to its customers and competitors colloquially as "U S Gold." Typically, the corporation's telephones were an-

---

**3.** To the extent that U.S. Gold & Silver Investments, Inc. attempts to make a distinction between the standard applied to the service mark of a business and the standard applied to the trademark of a product, its argument has no merit. The courts have consistently applied identical standards to govern trademark and service mark infringement cases. *Nutri/System, Inc. v. Con–Stan Industries, Inc.*, 809 F.2d 601, 604 (9th Cir.1987).

swered, "U S Gold." The corporate name thus was shortened in everyday use in the same manner as "J. Aron & Company" is colloquially shortened to "J. Aron."

\*      \*      \*      \*      \*      \*

Beginning in the Spring of 1983, the plaintiff corporation received several misdirected telephone calls per day. I personally answered many dozen such telephone calls. The callers were not seeking the services of the corporation, but were seeking the source of the American Arts Gold Medallions which had been advertised as "U. S. Gold."

After the corporation began to receive the misdirected calls, I conducted my own investigation of how information about the corporation's "800" number was being handled by the directory assistance service. I telephoned (800) 555–1212, and I discovered that the American Arts Gold Medallion promotion was being conducted through an unlisted "800" number. When asked for the number to call to purchase "U. S. Gold," the operators provided the number of U.S. Gold & Silver Investments, Inc.

When I conducted a similar investigation at a later time, I discovered that the information provided by the information operators had shifted by 180 degrees. At that time, when I asked for the number of my own corporation, I was provided with the number of the toll-free number to order American Arts Gold Medallions.

Heim's statement that his corporation was known to its customers and competitors colloquially as "U.S. Gold" is not sufficient to create a genuine issue of material fact as to the existence of a secondary meaning. *See, e.g., Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 739 F.2d 1434, 1436 (9th Cir.1984); and *Preston v. Heckler,* 734 F.2d 1359, 1373 (9th Cir.1984). Heim's affidavit shows that there was a mix up in directory assistance, and he received some misdirected telephone calls. Callers seeking the source of the American Arts Gold Medallions, advertised as "U.S. Gold," were incorrectly given the number for U.S. Gold & Silver Investments, Inc. This factor goes directly to the likelihood of confusion among customers. However, this evidence shows that the telephone directory service confused the services of U.S. Gold & Silver Investments, Inc. and J. Aron. The chief inquiry in establishing secondary meaning is directed toward purchasers' attitudes toward a mark. *Carter–Wallace, Inc. v. Proctor & Gamble Company,* 434 F.2d 794, 802 (9th Cir.1970). As such, the relevant factors are directed toward advertising and public exposure to the mark. To create a question of fact on the issue of secondary meaning, U.S. Gold & Silver Investments, Inc. must produce, for example, some evidence such as the amount and manner of advertising, volume of sales, the length and manner of use, direct customer testimony and consumer surveys. The strongest evidence the court has is the statement that customers and competitors colloquially refer to U.S. Gold & Silver Investments, Inc. as "U.S. Gold." This is simply not sufficient to present this case to a factfinder for trial.

Defendant J. Aron & Company's motion for summary judgment is granted.