## NU-ENAMEL CORPORATION OF ILLINOIS (NU-ENAMEL CORPORATION OF DELAWARE, Intervener) v. ARMSTRONG PAINT & VARNISH WORKS.

### No. 6268.

Circuit Court of Appeals, Seventh Circuit.

Feb. 24, 1938.

Rehearing Denied March 28, 1938.

Edward S. Rogers, William T. Woodson, and James H. Rogers, all of Chicago, Ill., for appellants.

Moses Levitan, of Chicago, Ill. (George A. Carpenter, of Chicago, Ill., of counsel), for appellee.

Before EVANS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff appeals from a decree of the District Court dismissing for want of equity its bill for infringement of a trade-mark and to recover damages for unfair competition. The latter ground for relief was not considered by the court on its merits, but was disposed of by a finding that the court, having found the trade-mark invalid, had no jurisdiction to grant relief for unfair competition.

The sufficiency of the bill of complaint was before this court in Nu-Enamel Corp. v. Armstrong Paint & Varnish Works, 7 Cir., 81 F.2d 1, and it was there held that the bill was sufficient and that three questions were presented, namely, (1) Has plaintiff a valid trade-mark in "Nu-Enamel"? (2) Is it infringed by defendant? (3) Was a cause of action based on unfair trade and practice stated in the complaint? The court reversed a decree of the District Court dismissing the bill upon defendant's motion, pointing out that the first two queries were questions of fact and that the averments being sufficient as to each of them and also upon the third question, the court should hear the evidence and enter a decree in conformity therewith.

After reversal, the defendant filed an answer in which it said: "Defendant admits that the name 'Nu-Enamel' has come to mean and is understood to mean, throughout the United States, including the State of Illinois and the City of Chicago, the plaintiff and plaintiff's products only and the word 'Nu-Enamel' is a mark by which the goods of the plaintiff are distinguished from other goods of the same class."

The mark "Nu-Enamel" has been used since 1922 and was registered in 1933. It has been applied to paints, varnishes, enamels, top dressings, paint brushes, wood powder, patching plaster, wax, varnish remover, glue, mineral oil colors, solder, and tack rags, all products of plaintiff. These articles are sold under the mark in 300 stores, operating under the name Nu-Enamel and handling plaintiff's products exclusively, 25 of which stores are located in and about Chicago. The name Nu-Enamel appears on the windows of these stores or on the window valances and is displayed by Neon signs. In addition, plaintiff's products are sold under the trade-mark in every state of the union, through approximately 3,000 dealers, as well as abroad. Plaintiff has spent several hundreds of thousands of dollars each year in advertising its products under this mark. In connection with the distinctive name, plaintiff uses the slogans "One Coat Covers," "Leaves no Brush Marks," and "A Coat of Enduring Beauty." From these facts, in connection with defendant's admission, it is apparent that the word "Nu-Enamel" is the mark by which products of plaintiff covering the various articles above mentioned are distinguished from the goods of all other persons. Thus the word has developed a secondary meaning.

It is contended by defendant that the mark "Nu-Enamel" cannot be the subject-matter of a valid trade-mark for the reason that it is descriptive in character, and the District Court so found. We cannot agree. The word "Nu-Enamel" as applied to paints, paint brushes, solder, wax, and similar products is in no wise descriptive of the subject-matter or of the possibility of results of use of the products. Rather it constitutes a fanciful phrase, largely advertised and generally known to the public, signifying the products of plaintiff, irrespective of their composition, character, or purpose. The name is similar to the words "Coca-Cola" considered by the Supreme Court in Coca-Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 114, 65 L.Ed. 189, where Mr. Justice Holmes said: "The name now characterizes a beverage to be had at almost any soda fountain. It means a single thing coming from a single source, and well known to the community. It hardly would be too much to say that the drink characterizes the name as much as the name the drink. In other words 'Coca-Cola' probably means to most persons the plaintiff's familiar product to be had everywhere rather than a compound of particular substances. Although the fact did not appear in United States v. Coca Cola Co., 241 U.S. 265, 289, 36 S.Ct. 573, 60 L.Ed. 995, Ann.Cas.1917C, 487, we see no reason to doubt that, as we have said, it has acquired a secondary meaning in which perhaps the product is more emphasized than the producer but to which the producer is entitled." It also comes within the definition of a trade-mark contained in Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U.S. 665, at page 673, 21

S.Ct. 270, 273, 45 L.Ed. 365. There the court said that a trade-mark is "a distinctive mark of authenticity, through which the products of particular manufacturers or the vendible commodities of particular merchants may be distinguished from those of others. It may consist in any symbol or in any form of words." In view of the fact that the word cannot possibly be descriptive, when applied to plaintiff's products as a whole, but is a manufactured phrase which has come to mean only plaintiff's products, irrespective of their character or purpose, we find it valid.

■ Furthermore, we think the evidence clearly shows infringement. Defendant's mark consists of the word "Nu-Enamel" with the word "Beauty" inserted between the words "Nu" and "Enamel" or between the words "New" and "Enamel." The addition of this word becomes significant in view of the slogan placed by plaintiff on its cans over the trade-mark, "The Coat of Enduring Beauty," where the word "Beauty" appears immediately above the word "Nu-Enamel."

■ In order to infringe a trade-mark, it is not necessary to use the identical words or that those employed be so similar that a person looking at one would always be deceived into believing that it is the other. It is sufficient to constitute infringement that one adopt a trade-name so like another in form, appearance, spelling, or sound that the purchasing public is likely to become confused or misled. Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 40 A.L.R. 424; Northam Warren Corporation v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774; Meyer v. Dr. B. L. Bull Vegetable Medicine Co., 7 Cir., 58 F. 884. Thus this specific trade-mark was held to be infringed in Nu Enamel Corporation v. Nate Enamel Co., Inc., 243 App.Div. 292, 276 N.Y.S. 930, affirmed in 268 N.Y. 574, 198 N.E. 411.

That there was confusion between the products of plaintiff and defendant clearly appears. Witnesses testified that they called on dealers handling defendant's product and asked specifically for Nu-Enamel. In forty-six instances New Beauty Enamel was delivered to them, without explanation. This included products marked New Beauty Enamel and Nu Beauty Enamel, the former being the mark adopted by defendant some two months after this suit was brought. Other instances of confusion appear in the record. There was evidence of similarity in advertising, adoption of the slogans of the plaintiff, and other acts, all bearing also heavily upon the issue of unfair competition.

■ As we have had occasion previously to announce, a manufacturer of goods is entitled to the reputation he has established and the public has the right to rely upon his distinctive means of distinguishing between his and other goods. Courts will not unduly extend monopolies under trademarks, but where a clear property right is shown and it is apparent that that right is being invaded and trespassed upon as in the present case, we shall not hesitate to grant relief. He who establishes a favorable reputation of merchandise under a known mark, brought about by extensive advertising and backed up by continuous manufacture of reputable products branded with a definite mark, which indicates not their character or purpose but their origin, shall be protected; and he who attempts to acquire the business which "another has developed through many years of fair dealing and through the expenditures of vast sums in advertising and in establishing a good will," must face the fact that his actions will meet with disapproval and condemnation. The facts presented to us in the instant case persuade us that the defendant attempted to convert to its own use the property right which plaintiff had built up represented by the trade-mark.

In view of our determination in this respect, the conclusion of the District Court that it had no jurisdiction of the issue as to unfair competition also was erroneous.

The decree is reversed with directions to proceed in accord with the views herein expressed.