## PRO–PHY–LAC–TIC BRUSH CO. v. JORDAN MARSH CO.

No. 4270.

Circuit Court of Appeals, First Circuit.

Jan. 14, 1948.

George P. Dike, of Boston, Mass. (George P. Towle, Jr., of Boston, Mass., on the brief), for appellant.

Herbert P. Kenway, of Boston, Mass., and Orville N. Greene, of New York City

(Kenway & Witter, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge..

The plaintiff, a Delaware corporation and the owner of two registrations of the word "Jewelite," one, No. 382,241, as a trade-mark for "Hair Brushes," and the other, No. 410,035, as a trade-mark for "Hair Brush and Comb Sets; and Toilet and Dresser Sets, Consisting of Combs, Brushes, Mirrors, Nail Files, Powder Boxes, and Dresser Trays, All Made of or Backed with Plastic Material," is seeking to enjoin the defendant, a Massachusetts corporation, from selling comparable goods bearing the legend "Gemlite"; specifically it seeks to enjoin the sale of a toilet set consisting of a hairbrush, hand mirror and comb labeled "Gemlite Dresser Set" manufactured by the Gemloid Corporation of New York. In addition the plaintiff is seeking damages, costs, and such other relief as may be proper in the circumstances. The court below on a stipulation of facts, including physical exhibits, entered a judgment dismissing the plaintiff's complaint and this appeal followed. The action being for infringement of a registered trade-mark, federal jurisdiction is clear. 15 U.S.C.A. § 97.

Pro-phy-lac-tic Brush Company, the plaintiff herein, has long been widely known as a manufacturer of tooth brushes. It made hairbrushes, however, before it made tooth brushes, and for many years it has also made toilet sets consisting of such items as combs, brushes, hand mirrors, powder boxes, nail files and so forth. For many years its products have been made of wood, metal and plastics. At various times since 1901, except for brief periods during World Wars I and II, it has used the words, "Western Gem," "The Gem" or "Gem" in interstate commerce as trade-marks on different lines of tooth brushes. It registered the word "Gem" as a trade-mark for such brushes in 1936.

The Gemloid Corporation, which has agreed to indemnify the defendant Jordan Marsh Company for any loss it may sustain as a result of its sale of Gemlite Dresser Sets, and which also provided Jordan Marsh Company with the exhibits it introduced in evidence herein, was organized under the laws of New York in 1931. In 1934 it was selling hand mirrors with decorative inserts on the back made of a "Cloisonne" finish plastic which it referred to as its "Gemlike" material. These mirrors did not have any trade-mark when shipped by Gemloid. Between 1934 and 1939 it sold sheets of ornamented plastic material (at an extra charge it sometimes cut these sheets up to make inserts), which it called its "Gemlike," "Gemloid" and "Enameloid" displays. It has registered "Gemloid," "Gemlike," "Gemglo" and "Gem-Cote" as its trade-marks in the general field of plastics.

In 1939, apparently late in the year, Gemloid expanded its line of products from sheet plastic material into molded plastic articles. Counsel for Gemloid says in his brief, although it is not so stipulated, that its expansion into this field was a natural development of its business at that time because machines for the injection molding of plastics had then been just developed commercially, and this process permitted the complete fabrication of molded articles in a single operation in one mold, thereby eliminating the complicated fabrication previously necessary in manufacturing such objects. At any rate, in November 1939 Gemloid ordered and received a steel stamp bearing the symbol "Gem Lite" with the words placed one over the other in a gem-shaped geometrical figure, and in January 1940 it shipped a customer as samples 26 unlined plastic boxes designed to contain finger rings which had been made in a mold into the bottom of which this stamp had probably been impressed. In February 1940, it applied for registration of "Gem Lite," displayed as described above, as a trade-mark not for completely manufactured toilet sets, but for plastic castings used for molding parts of toilet sets, and other related objects commonly found on a woman's dressing table, alleging that it had used that mark in interstate commerce since September 6, 1939. Also in February 1940, it shipped more unlined plastic ring boxes to its former customer, these boxes undoubtedly bearing on their bottoms the words "Gem Lite" displayed as described

above and bearing also the initials of the customer. In March 1940 it shipped plastic clock cases impressed on the bottom with the mark "Gem Lite," as above described, and in May 1940, it shipped empty plastic face powder containers similarly marked to another customer. In June 1940, it shipped plastic parts of boudoir lamps impressed with the word "Gemlite" written in one word to still another customer. All of these objects were given a cloisonne finish similar to the "Gemlike" sheet material previously referred to and were intended to harmonize with articles for a woman's dressing table having a similar finish.

The Pro-phy-lac-tic Brush Company began to use the word "Jewelite" as a trademark on hairbrushes sold in interstate commerce on April 5, 1940, and it has continued so to use it ever since. It did not know at the outset of its use of this mark that Gemloid Corporation was using "Gem Lite" on any of its products. On May 2, 1940, Pro-phy-lac-tic applied for registration of its trade-mark "Jewelite" on hairbrushes, and on May 27, 1943, it applied for registration of the mark for toilet and dresser sets. It has used "Jewelite" on hairbrush and comb sets continuously since August 15, 1940; on mirrors and on dresser sets continuously since January 2, 1941, and on toilet sets continuously since June 16, 1941. It placed its trade-mark on its goods and also on the boxes in which its goods were sold.

It has advertised its "Jewelite" line very extensively and its business in products bearing that name has increased enormously, requiring a substantial increase in its plant. It is stipulated that if Pro-phy-lac-tic's vice-president were called as a witness he would testify that "due to extensive advertising, the 'Jewelite' line had global coverage, being known all over the world, and had complete coverage in this country, from small country drug stores to regular 'Jewelite' departments in department and syndicate stores," and that "the 'Jewelite' line

was reputed to be the biggest thing that ever hit the toilet goods field of the drug trade in its first year of distribution."

On the facts just summarized, and on a comparison of the physical appearance of the plaintiff's "Jewelite" set and the "Gemlite Dresser Set" sold by the defendant,[1] the District Court found no likelihood of consumer confusion as to the source of the respective goods and therefore concluded that the defendant had not infringed the plaintiff's trade mark. We think this finding and conclusion must stand.

The appellant contends that the court below came to the wrong conclusion for two principal reasons: First because it relied too much on a side by side visual comparison of the trade-marks and of the goods upon which they were used and too little upon the identity of the impression made on the memory by the words "Gemlite" and "Jewelite," and second because it did not give any weight to the fact that in cancellation proceedings in the patent office Gemloid had sought to prevent registration of "Jewelite" by Pro-phy-lac-tic on the ground of confusing similarity with Gemloid's previous registration of "Gem Lite." Its argument in support of this second contention is that Gemloid, had it been the defendant of record herein, "could not have raised the defense of dissimilarity of the trade marks as it had taken the contrary position in the Patent Office when it sought cancellation of Pro-phy-lac-tic's trade-mark Jewelite," and that "Jordan Marsh should stand in the same position as Gemloid" and "in equity and good conscience * * * should be subject to Gemloid's obligations" for the reason that Gemloid had agreed to indemnify Jordan Marsh, had provided the exhibits used in this case, and had furnished the counsel who had taken over the defense of this suit. Therefore it says that Gemloid is the real party defendant and Jordan Marsh is

---

[1] Both sets are made of a clear, translucent plastic material. They differ nevertheless in that the backs of the hairbrush and mirror of the "Gemlite" set sold by the defendant are decorated with white cloisonne work inserts embellished with a representation of frolicking cherubs and the nylon bristles of the hairbrush in that set are fixed in a wooden block which in turn is set in the plastic frame, whereas the plaintiff's "Jewelite" set is made entirely of the clear plastic material without embellishment and the nylon bristles of the hair brush are set directly into the plastic frame. The combs of the two sets are practically indistinguishable except for their respective trade-marks.

the defendant in name only. The plaintiff-appellant does not go so far as to suggest that Jordan Marsh, through Gemloid, is estopped in this suit as a matter of law by the position taken by the latter in its cancellation proceeding. Its contention is only that Gemloid's stand in that proceeding was not, but should have been, "taken into consideration" and given its "proper weight in determining the question of similarity of the marks." Reduced to its simplest terms we understand this argument to be that since Gemloid is in fact the defendant in everything but name, the position it took in the Patent Office should be considered as militating against the contradictory position now taken by the named defendant in the case at bar.

We do not believe that either of these contentions can be sustained.

Undoubtedly in determining whether given trade-marks are so similar as to be likely to cause confusion in the minds of consumers as to the source of the goods upon which they are used it is not enough merely to compare the sounds of the words which may be used as trade-marks, or to compare those words letter by letter and syllable by syllable, or even to make merely a side by side visual comparison of the words in the setting in which they are employed. Dwinell-Wright Co. v. National Fruit Product Co., Inc., 1 Cir., 140 F.2d 618; Coca-Cola Company v. Snow Crest Beverages, Inc., 1 Cir., 162 F.2d 280, certiorari denied, 1947, 68 S.Ct. 110. Purchasers undoubtedly often compare a mark which they see when making a purchase with their memory of a mark which they have seen on some previous occasion. That is to say, they compare their memory of a mark which they have seen in the past with their visual impression of a mark which they presently see. As Mr. Justice Holmes remarked in Schlitz Brewing Co. v. Houston Ice & Brewing Co., 250 U.S. 28, 30, 39 S.Ct. 401, 63 L.Ed. 822, "* * * there is little to be said except to compare the impression made by the two, or, if that form of statement is preferred, the memory of Schlitz with the presence of the defendant's bottles as marked."

Undoubtedly also, the words "gem" and "jewel" being synonymous, the trade-marks "Gemlite" and "Jewelite" with their identi-cal endings might possibly be confused in the memory. A purchaser having a "Jewelite" dresser set in mind from having seen the plaintiff's advertising or from having seen a set so marked in someone else's possession, might possibly assume when he saw a "Gemlite Dresser Set" that his memory was playing him false and that in fact it was the latter set he had seen or seen referred to previously as the set made by Pro-phy-lac-tic.

But the District Court did not ignore this consideration. In its memorandum opinion it said, and we entirely agree, that "Even when both ["Jewelite" and "Gemlite"] are printed in the same type of script, the difference between them is apparent, and it seems most unlikely that the ordinary purchaser of a $10 or $15 toilet set would be confused merely by the similarity of meaning of the two marks."

Furthermore both marks are weak. The words "gem" and "jewel" equally share the connotation of value and beauty combined, and the suffix "lite" is in common use as the equivalent of "lith" to denote a mineral or mineral like substance, as in cryolite or bakelite. See Webster's New International Dictionary, Second Edition. Thus both marks refer to, and would undoubtedly be generally understood to refer to, a valuable and beautiful mineral-like material. Their obvious connotations of beauty and value make them as weak as the marks "Blue Ribbon" and "Gold Seal" with their obvious connotations of prize-winning quality.

In view of these considerations and of the lack of positive evidence of actual instances of consumer confusion, we think it most unlikely that there would be more than a remote possibility that the ordinary consumer would be so confused as to think the "Gemlite Dresser Set" was the "Jewelite" hairbrush, hand mirror and comb set made by the plaintiff.

Nor do we think Gemloid's cancellation proceeding against Pro-phy-lac-tic has any material bearing on the basic issue under consideration in this case. Obviously there is no question of estoppel presented. At the most, assuming Gemloid for all intents and purposes to be in fact the defendant in everything but name, there is presented only the not uncommon situation

of a party who has taken a prior inconsistent position. This inconsistency may be considered, of course, in testing the strength of a party's case. A position taken by a party in court is obviously weakened if on some previous occasion he has taken a contradictory one. But a prior inconsistent position is far from conclusive on a litigant, since it may be explained in a variety of ways, as for instance, on the ground of a prior mistake or on the ground that the party for good reason has changed his mind. Certainly Gemloid's cancellation proceeding is not enough when thrown into the scales to overbalance the weight of the evidence supporting Jordan Marsh's case.

One other contention of the plaintiff deserves brief consideration.

It says that although the defendant, and Gemloid also, are innocent of the charge of wilfully copying or of wilfully attempting to colorably imitate the plaintiff's mark (counsel for the plaintiff conceded at oral argument that the collision of the interests of the parties came about in the first place innocently) nevertheless it is entitled to have the good will which it has built up for its trade-mark "Jewelite" protected from "dilution" by the use of the word "Gemlite" on toilet sets. It submits that the use of the latter word on toilet goods will sufficiently interfere with the memory value of its word "Jewelite" to injure seriously the good will it has created for its word.

The answer to this contention is that the "dilution doctrine," as it may be called, operates to extend the protection of the trade-mark law to the situation presented when similar marks are used on dissimilar goods, and that it has no application when the question is whether the marks being used on goods of substantially the same descriptive properties are similar enough to cause confusion in the minds of consumers with respect to the source of the goods. That is to say, the statute, 15 U.S. C.A. § 96, affords protection to the owner of a registered trade-mark against the use by others without his consent of reproductions, counterfeits, copies or colorable imitations of his mark on "merchandise of substantially the same descriptive properties" and the dilution doctrine operates to give the owner of a registered trade-mark the same protection against the use of his mark by others on goods of different descriptive properties. Thus the doctrine may be invoked to protect the owner of a mark for automobiles and airplanes from the use by another of a very similar mark for radio tubes (Wall v. Rolls-Royce of America, Inc., 3 Cir., 4 F.2d 333) or to protect the owner of a mark for fountain pens and similar writing instruments from the use by another of a very similar mark for safety razor blades. L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272. But the marks must be deemed similar before the doctrine has any application. Therefore, since we agree with the district court that the marks under consideration are not similar within the meaning of the statute, whereas the goods upon which they are used undoubtedly are of the same descriptive properties, it follows that the dilution doctrine has no bearing upon the situation with which we are here concerned.

Another answer to this contention is that the word "jewel," being weak, was already diluted when the appellant adopted "Jewelite" as its mark. Stipulated exhibit Z, a list of pertinent trade-mark registrations, shows forty registrations of the word "Gem", either alone or in combination with some other word or syllable, prior to the plaintiff's registration of "Jewelite," and nine similar registrations of "Jewel," either alone or in some combination, as follows: four registrations of the single word "Jewel" (No. 144,880 for Hair Nets, No. 350,010 for Knitting Pins etc., No. 354,447 for Roofing Mops, and No. 388,761 for Plastic Knives) two registrations of "Jewel Tone" (No. 393,483 for Closet Accessories, and No. 410,141 for Compacts made of Base Metal and Plastics) one registration of "Jewelette" (No. 269,530 for Spectacle Frames), one registration of "Jewel Box" (No. 412,150 for a Kit for Permanent Waves) and even a registration of the word "Jewelite" itself in 1932 (No. 294,-333 for Abrasive Papers and Cloths etc.).

In view of the foregoing we do not see any substantial basis for the plaintiff's cry of dilution.

The judgment of the District Court is affirmed.