## S. E. MIGHTON COMPANY

v.

## LA PRYOR MILLING CO.

Patent Appeal No. 6468.

United States Court of Customs and Patent Appeals.

Jan. 19, 1960.

Beverly W. Pattishall, Woodson, Pattishall & Garner, W. Thomas Hofstetter, Chicago, Ill., of counsel, for appellant.

No appearance for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and JOHNSON (retired), Judges.

SMITH, Judge.

Appellant, owner of the trademark "Doggie Dinner" for a food for dogs, cats and other animals (Reg. No. 568,482 issued Dec. 30, 1952), opposed the application of appellee to register "Dog-E-Dite" as a trademark for a vitamin and mineral dietary supplement preparation for feeding dogs. The present appeal was taken from a decision of the Assistant Commissioner affirming the dismissal of the notice of opposition by the examiner.

As pointed out by the Assistant Commissioner at 116 USPQ 525, 526:

"Opposer's record shows that it and its predecessors have used 'Doggie Dinner' continuously since 1927, and such use has been extensive. Opposer has spent approximately $150,000 in advertising 'Doggie Dinner' dog food since it acquired the mark in 1950.

"There is no question but that opposer enjoys a substantial goodwill which is symbolized by the trademark 'Doggie Dinner.'

"Although it is apparent that opposer's dog food and applicant's dietary supplement for dog consumption are not the same, they are nevertheless so related that they might well be produced by a single manufacturer. Average purchasers of the products of the parties are obviously the same, namely, dog owners, and the products are sold in the same types of retail outlets under substantially the same conditions and circumstances. The sole question, then, is whether or not applicant's 'Dog-E-Dite' so resembles opposer's mark 'Doggie Dinner' as to be likely to cause confusion or mistake of purchasers."

Testimony was taken by the opposer in support of the factual allegations in its notice of opposition. The Assistant Commissioner and the examiner found that this testimony was not entitled to any weight. We have considered the testimony and reviewed this holding below.

While we think the testimony is of very little probative value, it should be considered to the extent that it actually is proper evidence.

The testimony as a whole fairly establishes facts upon which we can properly rely in arriving at the conclusions above quoted from the opinion of the Assistant Commissioner. However, on the question of confusion or mistake the evidence is of so little probative value that it is not entitled to, nor has it been given, any weight in arriving at our decision.

There is nothing in the record upon which we can properly evaluate the testimony which was taken to support appellant's allegations. Eight witnesses testified, but there is nothing to show how many were interviewed before these eight were selected. There is nothing to show what induced these persons to travel to Chicago in order to give their testimony. It strains the credulity of the court to believe that the first eight persons contacted spoke as one in asserting that they would be confused, and in spontaneously offering to testify in Chicago without, as one witness put it, being told "anything about anything."

The unidentified "Mr. Simitz" who contacted the witnesses did not testify as to whom he interviewed or what transpired during the interviews. There is no evidence indicating that the witnesses were typical of the potential purchasers of the products involved.

Much of the testimony is vague and indefinite, a substantial portion of it being given in answers to leading questions.

■ If any party to an opposition proceeding desires to prove actual instances of confusion, or the absence of confusion, it should be done by competent, relevant and material evidence. The fact that, as here, one party may not appear and is not represented during the taking of testimony, does not waive the requirement that the proofs taken must conform to the rules of evidence. Anything less than that imposes an un-

fair burden on the tribunals required to sit in judgment on the record and imposes an unwarranted expense and unjustifiable burden on the litigants.

 Finding, as we do here, that the testimony bearing on the issue of confusion is not acceptable as evidence, we give it no weight in determining whether the use of the mark "Dog-E-Dite" on applicant's goods is likely to cause confusion or mistake or to deceive purchasers. While we cannot rely upon the testimony of confusion before us, testimony of actual confusion is not required in opposition proceedings. Kautenberg Co. v. Ekco Products Co., 251 F.2d 628, 45 CCPA 761. We pass then to a consideration of the two marks.

The Assistant Commissioner found that the marks "Doggie Dinner" and "Dog-E-Dite" do not look alike, and while finding that the first two syllables may sound somewhat alike, found that the latter portions of the marks do not resemble each other in sound. While we agree that the marks do not look alike and have some difference in sound, we do not agree that these differences are sufficient to overcome the potential purchasers' psychological reactions and mental associations produced by the marks. The connotations and imagery of the marks taken as a whole seem to us to produce psychological reactions and mental associations which are likely to cause confusion or mistake or to deceive purchasers.

The two marks, although they may look different, both evoke the same basic reactions and call forth the same mental associations, i. e., that they relate to food products for dogs. The word "Doggie" and the term "Dog-E," either when read or when spoken, leave no question (except perhaps when spelled "dogie" in Texas or other cattle raising areas) that the products are products intended for dogs. Technically, it is used in a somewhat fanciful way in both marks except as applied to food for small dogs.[1]

When used on food for cats and other animals the name "Doggie" is fanciful. The alliteration of "Doggie Dinner" is closely paralleled by that of "Dog-E-Dite." The misspelling of the word "diet" as "Dite" in applicant's mark does not change its meaning or significance. While admittedly the word "Dite" (diet) may not call forth the same pleasant psychological reactions and mental associations as does the word "Dinner," they both communicate the idea of food.

 In such cases, "A consciousness of the fallibility of human recollection must, of course, be paramount * * *, whether the resemblances in marks be primarily visual—'look alikes'—auricular —'sound alikes'—or psychological—'respond alikes.' Customer confusion involves, in the final analysis, matters of mistaken identity—and the considerations are not unlike those involved in cases of mistaken identity of people." Leeds—"Trademarks—The Rationale of Registerability," 26 George Washington L. Rev. 653, p. 660.

While the marks before us as presently used by the parties are visually dissimilar, this fact is not controlling. The auricular differences in the marks before us are outweighed by their auricular similarities. The similarities in the sound of the names when considered in connection with the similarities of the goods are sufficient to invoke the same psychological reactions and to produce the same response in at least some purchasers.

 These considerations are the reasons for our opinion that the mark "Dog-E-Dite" could not be used on applicant's goods without being likely to create confusion or mistake or to deceive purchasers as to the source or origin of the goods.

We, therefore, *reverse* the decision of the Assistant Commissioner.

Reversed.

WORLEY, C. J., and JOHNSON, J., dissent.

1. Webster's Collegiate Dictionary defines "doggie" as "a small dog."