**Sidney J. FRIEDMAN, d.b.a. Wyandotte Mattress Company, Appellant,**

v.

**SEALY, INCORPORATED, Appellee.**

**No. 6053.**

United States Court of Appeals
Tenth Circuit.

Dec. 16, 1959.

Rehearing Denied Jan. 20, 1960.

Bernard L. Balkin and Irving Achtenberg, Kansas City, Mo. (Achtenberg, Sandler & Balkin, Kansas City, Mo., of counsel, were with them on the brief), for appellant.

Gerrit P. Groen, Chicago, Ill. (William Marshall Lee, Dean A. Olds, Chicago, Ill., and Thomas E. Scofield, Kansas City, Mo., of counsel, were with him on the brief), for appellee.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

LEWIS, Circuit Judge.

Plaintiff-appellee was successful in obtaining an injunction and recovering damages against defendant-appellant in a suit based on trademark infringement brought in the United States District Court for the District of Kansas.

The trial court found that the trademarks "Posturepedic" and "Golden Sleep" are both registered on the Principal Register in the United States Patent Office and have been used by the plaintiff since 1950 and 1938, respectively, on mattresses and box springs. The allegedly infringing marks, "Proper-Pedic" and "The Golden Fleece," also applied to mattresses and box springs, have not been registered but have been used by defendant since 1954. The court held that the defendant's use of the latter mark infringes upon plaintiff's rights in the former, stating:

"Posturepedic as compared to Proper-Pedic and Golden Sleep as compared to Golden Fleece are confusingly similar in sound, appearance and somewhat in meaning.

"Plaintiff has adduced some evidence as to confusion. However, a showing of likelihood of confusion alone warrants relief where the respective marks are used on identical or similar products. And, in comparing marks as to similarities, such marks must be considered in their entireties including even common or suggestive terms used in the respective combinations."

Upon the defendant's making a motion to set aside or modify the judgment, the trial court made further findings concerning the defendant's intent:

" * * * I don't think that we would go so far as to say that there was malice or anything like that, but I do think, looking at the whole thing, generally, that there was a deliberate intention on the part of the defendant to infringe, and under this Standard Oil case in the Tenth Circuit, [The Standard Oil Co. v. Standard Oil Co., 10 Cir., 252 F.2d 65] it says that the law as to trademark is but part of the broader law of unfair competition.

"I think that the similarity of these names, especially upon this particular subject, is such that the court thinks that it was deliberate.

"Just taking it as a whole, all of the testimony and everything that I have seen, I think as a whole it was intentional."

The issues presented on appeal concern whether the court should have held the plaintiff's trademark "Golden Sleep" to have been abandoned, error alleged in the admission and consideration of certain plaintiff's evidence and the refusal to admit certain defendant's evidence, whether the court erred in holding that defendant's use of his marks infringed plaintiff's trademarks, and finally claimed error in the award of $7,500 damages.

In attacking the trial court's implied finding that the "Golden Sleep" trademark has not been abandoned by the appellee, appellant relies upon 15 U.S.C.A. § 1127:

"A mark shall be deemed to be 'abandoned'—

"(a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment."

The testimony of Sealy's president, Mr. Bergmann, indicates that the main current use of the term "Golden Sleep" is to designate a type of promotion, the summer sale of a number of the Sealy mattresses. It also appears that whereas before 1954 the "Golden Sleep" mattress was advertised extensively as Sealy's $59.50 line, the present emphasis is upon a creation called "Enchanted Night," but the witness further testified that some of the franchised plants are still selling "Golden Sleep" mattresses.

Appellant contends that Sealy's present use of the term is a non-trademark use which does not prevent the inference of abandonment of the trademark, Autoline Oil Co. v. Indian Refining Co., Inc., D.C.M.D., 3 F.2d 457, but the record indicates no need for reviewing the question as posed. Mr. Bergmann was explicit in his statement that "Golden Sleep" was a label presently used by the franchisees on a particular type of mattress. Appellant attacks this testimony as being unaccompanied by the extensive documentation that marked the presentation of plaintiff's case in chief, but the issue of abandonment is one of defense with its consequent burden devolving on him who asserts it. The Court of Customs and Patent Appeals has consistently held that the introduction of a trademark registration presents prima facie proof of continuing use of the mark as well as ownership, Gillette Company v. Kempel, 254 F.2d 402, 45 CCPA 920.

Under this status of the evidence and the conflicting inferences arising therefrom, the trial court's determination that the trademark "Golden Sleep" has not been abandond by its registered owner is not clearly erroneous as to require reversal, Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A.

The use of the unregistered trademark, "Proper-Pedic" by the Wyandotte Mattress Company first came to the attention of the Sealy Company when a Sealy franchisee forwarded a tear sheet from Life magazine, upon which appeared a Wyandotte advertisement one column inch in size. In this ad, "Proper-Pedic" appeared with a small circled "R", designating a registered trademark. Sealy began correspondence with Wyandotte

requesting the registration number; Wyandotte was advised by legal counsel that the use of the insignia was incorrect and eliminated it from its advertising material.

Life magazine offers as an inducement to its advertising customers the right to use gum stickers and hang tags bearing the motto, "As Advertised in Life," on their merchandise. Plaintiff, Sealy, Inc., an extensive national advertiser, has used these point-of-sale techniques for some time and after the appearance of the Proper-Pedic advertisement, the defendant, as Wyandotte Company, also attached them to mattresses of that name.

The Sealy company likewise makes use of a streamer bearing the Good Housekeeping Seal of Approval, in accordance with that magazine's endorsement. Since the mattresses of the Wyandotte Company contain an approved material "Tufflex," appellant has also used the Good Housekeeping streamers.

A former employee of the local Sealy licensee was employed shortly before the trial of this case by the Wyandotte Company as a sales person contacting retail dealers. Also, there is some evidence that another employee of the Sealy firm offered some casual aid in either arranging Wyandotte's physical plant or in suggesting the proper design for box springs. This evidence was admitted upon plaintiff's counsel's statement that he was attempting to prove the claim of unfair competition joined in the complaint for trademark infringement, but the evidence does not rise to an inference of customer or trade-secret stealing by the first-mentioned employee and demonstrates that the help given by the other employee was with the sanction of his employer.

■■ To all of the above outlined evidence, i. e. the wrongful use of the registration designation, the use of Life and Good Housekeeping promotional material, and the employment of Sealy's personnel, the defendant objected on the ground of relevancy. Dissecting the evidence, as appellant does, each item gives rise to equally-balanced and opposite considerations. Each action by the defendant is explicable as coincidence and innocent motive, but this does not render the evidence as a whole devoid of probative value. Counsel had ample opportunity to argue the value of the evidence as showing a pattern of imitation or as being merely a series of unrelated circumstances affording no basis for a reasonable inference of fact. The weight to be given this evidence was primarily for the trier of the fact and in instances where different inferences may be drawn from the established facts, it is not within the province of this court to substitute its judgment for that of the trial court as to which inference should be drawn.

Defendant sought to introduce two exhibits, documents marked Exhibits J and K, as admissions by the plaintiff of limitations on its trademark rights. Exhibit J was an order of dismissal in the case of Sealy, Inc. v. Serta Associates entered after rulings on motions for summary judgment, reported Sealy, Inc. v. Serta Associates, D.C.Ill., 134 F.Supp. 621. In pertinent part, the exhibit reads:

"This matter came on to be heard upon the joint motion of the parties, and it appearing that the parties have settled their differences and the Court being fully advised in the premises, the Complaint and the Counterclaim are hereby dismissed without prejudice on the following conditions:

"1. Serta, without admitting that 'Posture-Ease' as a trademark infringes the trademark 'Posturepedic' will discontinue the use of the trademark 'Posture-Ease' but Serta has the right to use such other 'Posture' marks non-conflicting with 'Posturepedic' as it may be advised.

"2. Neither Sealy nor any of its licensees shall use 'Posture-Ease' as a trademark.

"3. Serta is free to continue to use the trademark 'Sertapedic.'

"4. Serta will withdraw its opposition to Sealy's application for registration of 'Posturepedic,' Serial

No. 663,524, published September 14, 1954, Opposition No. 34,072 in the United States Patent Office."

\* \* \* \* \* \*

"10. Sealy will not use the phrase 'Posture Perfect Sleep' or 'Perfect Sleep' as an emphasized feature of its advertising or as a trademark."

Defendant's Exhibit K is a Joint Motion to Dissolve Interference No. 5414 in the U. S. Patent Office executed jointly by Sealy, Inc. and the Simmons Company on November 10, 1950:

"The parties to the above-entitled interference jointly move to dissolve this interference on the ground that no interference, in fact, exists between the involved trademarks inasmuch as the trade-mark 'Golden Rest' of Simmons Company does not so resemble the trade-mark 'Golden Sleep' of Sealy, Incorporated as to be likely when applied to the goods of applicant to cause confusion or mistake or to deceive purchasers.

\* \* \* \* \* \*

"The trade-marks involved in this interference differ from each other to the same degree as many of the trade-marks registered by third parties for mattresses and box springs, and the parties hereto agree that said involved trade-marks are not confusingly or deceptively similar and that they are respectively entitled to use and register the trademarks which, as aforesaid, have been used for many years without causing confusion, mistake or deception."

The trial court refused the exhibits and offers of proof for the record were made. Appellee defends the action of the trial court in that only a portion of the record of the case of Sealy, Inc. v. Serta Associates was offered and that "The reported Sealy v. Serta suit contains nothing that would aid either side in this case," and further that the evidence was irrelevant as involving a company not a party to the present suit. In these views, appellee apparently confuses the controlling issues in a plea of res judicata with the admissibility of an admission against interest.

 Both documents were complete in themselves as a stipulation to avoid further litigation between Sealy, Inc. and its contestants. The report of the court's action upon the parties' motions for summary judgment has no bearing on what the parties finally agreed as to fact or future action. That these admissions were contained in pleadings entered in court records certainly does not make them less available as evidence than if they had been made extra-judicially, Rogers v. Edward L. Burton & Co., 10 Cir., 137 F.2d 284; IV Wigmore, Evidence, §§ 1061–2; nor is it significant that the representation was made in litigation with a third party, Frank R. Jelleff, Inc. v. Braden, 98 U.S.App.D.C. 180, 233 F.2d 671, 63 A.L.R.2d 400.

 Thus we conclude that the evidence could have been considered by the trial court, but the limited scope of the admissions, the status of the evidence demonstrating that other companies were using marks similar to the Sealy marks, and the rule of law that an infringement cannot be justified by the wrongful acts of others, Standard Oil Co. v. Standard Oil Co., 10 Cir., 252 F.2d 65; National Lead Company v. Wolfe, 9 Cir., 223 F.2d 195; Bond Stores, Incorporated v. Bond Stores, Inc., 3 Cir., 104 F.2d 124; inescapably lead to the conclusion that the refusal to consider such evidence was mere harmless error not justifying a reversal, Fed.Rules Civ. Proc. rule 61, 28 U.S.C.A.

 Appellant urges that the two chief questions involved on appeal are (1) Is there confusion or similarity likely to cause confusion as to the products represented by the marks? and (2) Are damages or an accounting of profits proper? As to both of these issues, he contends that the findings made by the trial court are not entitled to the weight generally accorded the trier's findings under Rule 52(a), Fed.Rules Civ.Proc., citing particularly the language of the

trademark case, Benrose Fabrics Corp. v. Rosenstein, 7 Cir., 183 F.2d 355, 358:

"* * * if findings rest upon documents, depositions or upon mere comparison of names, if credibility of witnesses is not involved, or if the trial tribunal has no opportunity to observe the witnesses, a court of review is as well qualified to pass upon the weight of evidence as is the trial court * * *."

However, in many facets, the evidence before this court is based upon the conflicting testimony of witnesses and creates a situation falling within the concluding words of the paragraph above cited:

"* * * but where, as here, conflicting stories are told by witnesses whose credibility is at stake, we may not supersede the determination of the finder of facts and substitute our judgment for his. It is not a question of whether we would have made the same finding; it is rather a question of whether the evidence substantially and adequately supports it."

The inferences to be drawn in the present case, in addition to certain direct testimony, are in conflict and it has long been held that where there is evidence from which reasonable men might draw different inferences, appellate courts may not substitute their judgment for that of the trial court, Colby v. Cities Service Oil Company, 10 Cir., 254 F.2d 665. Such doctrine is particularly applicable in cases of this type since the circumstances relating to the determination of whether or not there exists unfair competition is a cogent factor in the consideration of the likelihood of confusing similarity. As stated in comment f. to Section 729, Factors in Confusing Similarity, A.L.I. Restatement of the Law, Torts:

"* * * one may infringe another's trade-mark or trade name by adopting a confusingly similar designation whether he does so innocently or for the purpose of deceiving prospective purchasers. But his knowledge or purpose is an important factor in determining whether or not his designation is confusingly similar. If he adopts the designation in ignorance of the other's trade-mark or trade name, the similarity is determined on the basis of other factors. But if he adopts his designation with the intent of deriving benefit from the reputation of the trade-mark or trade name, his intent may be sufficient to justify the inference that there is confusing similarity. Since he was and is intimately concerned with the probable reaction in the market, his judgment manifested prior to the controversy, is highly persuasive. His denial that his conduct was likely to achieve the result intended by him will ordinarily carry little weight. While the actor's intention is thus a factor in determining the likelihood of confusion, the degree of similarity in appearance, pronunciation or suggestion is a factor in determining the actor's intention when that is in issue."

Indeed, defendant presented evidence that his buying the smallest possible space in Life magazine was not to cash in on anticipated results of the regular full-page ads run by Sealy, but rather the inception of an unrelated advertising campaign. When quizzed about why an essentially local concern would devote almost its entire advertising budget to a small, expensive, national ad, his reply was "You have to start somewhere." Since this approach is contrary to universal business logic, the trial court was justified in concluding contrary to his testimony that this demonstrated an intention to divert conditioned customers from Sealy.

Other evidences of an attempt to imitate and to delude customers are shown by the use of the Good Housekeeping endorsement and the wrongful indicia of registration. The trial court was presented with the justification and explanation of these items but deemed them part

of the plan to make the goods offered by appellant appear to have come from the national manufacturer, Sealy.

The practice of printing a price on the merchandise higher than the known retail selling price also indicates a continuation of the same plan.

■ Posturepedic and Proper-pedic create similar impact upon the eye and the ear and carry similar connotations to the brain. Although Golden Sleep and The Golden Fleece may upon considered analysis present different meanings, the concepts are hazy and when linked to the promoted product, sleep equipment, are designed to impress the buyer with the notion of luxury rest. There is confusing similarity if prospective purchasers are likely to regard the offending designation as indicating the source identified by the trademark or trade name, Standard Oil Co. v. Standard Oil Co., supra.

"In determining this matter, [whether the similarity is likely to cause confusion in the minds of the public] the marks must be considered as a whole and not dissected. Apex Electrical Mfg. Co. v. Landers, Frary & Clark, 41 F.2d 99, 17 CCPA 1184; B. F. Goodrich Co. v. Hockmeyer, 40 F.2d 99, 17 CCPA 1068. The buyer will not stop to dissect the marks. If he is deceived, he will be deceived by the mark as a whole, and not by any particular part of it." Celotex Co. v. Millington, 49 F.2d 1053, 1054, 18 CCPA 1504.

The test stated in A.L.I. Restatement of Torts, Sec. 729:

"In determining whether the actor's designation is confusingly similar to the other's trademark or trade name, the following factors are important:

(a) the degree of similarity between the designation and the trademark or trade name in

(i) appearance;

(ii) pronunciation of the words used;

(iii) verbal translation of the pictures or designs involved;

(iv) suggestion;

(b) the intent of the actor in adopting the designation;

(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;

(d) the degree of care likely to be exercised by purchasers."

■ Quite naturally, appellant has emphasized the differences in appearance of the labels and appellee has emphasized the similarities. Suffice it to say, that the similarities are sufficient to afford grounds for the trial court's determination that the public is likely to be confused, considering all the elements of imitation.

The present case involves parties engaged in identical enterprises, drawing their customers from the same sources, and using similar publicity methods to appeal to the habits of the ordinary customer. Such, too, was the situation in Standard Oil Co. v. Standard Oil Co., supra [252 F.2d 73], wherein it was said:

"Infringement is not to be determined on the basis of the words or symbols themselves to the exclusion of other considerations. It is not necessary for similarity to go only to the eye or the ear for there to be infringement. The use of a designation which causes confusion because it conveys the same idea, or stimulates the same mental reaction, or has the same meaning is enjoined on the same basis as where the similarity goes to the eye or the ear. Confusion of origin of goods may be caused alone by confusing similarity in the meaning of the designations employed. The whole background of the case must be considered."

Appellant protests that since a mattress or box spring requires an investment of $30 to $100, the degree of care which a customer might be expected to exercise is somewhat greater than if he were buying 5-cent candies. This argument has its alternate side in that the construction of sleep equipment is not a

matter of common knowledge and the consumer buys infrequently. He is thus forced to rely on his memory, more than his inspection, for the recall of names, guarantees, and endorsements. Under such circumstances, confusion can easily arise.

■ Appellant protests that there is no evidence of actual damage resulting to Sealy, Inc., from confusion of goods by the consuming public. Plaintiff-appellee, after proving that defendant-appellant's net sales from 1954 to time of trial have been approximately $20,-000, prayed for an award of $60,000 on the basis of 15 U.S.C.A. § 1117:

"When a violation of any right of the registrant of a mark * * * shall have been established * * *, plaintiff shall be entitled * * * to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. * * * In assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost * * In assessing damages the court may enter judgment according to the circumstances of the case for any amount above the amount found as actual damages, not exceeding three times such amount."

The trial court awarded $7,500 and denied recovery of attorney's fees and appellee requests this court to reconsider the equities involved, increase the award, and give judgment for attorney's fees. Appellant urges that since he had no notice of the registration of the trademark "Golden Sleep," the award must fail under 15 U.S.C.A. § 1111:

"Unless a registrant gives notice that his mark is registered, no profits or damages shall be recovered unless the alleged infringer had actual notice of the registration."

The theory of damages in trademark infringement cases was fully explored by this court in Blue Bell Co. v. Frontier Refining Co., 10 Cir., 213 F.2d 354, 362:

"Out of the welter of confusion occasioned by the judicial effort to fashion a remedy which would satisfy both legal and equitable concepts of appropriate relief for patent and trade-mark infringements, the courts have now settled on the theory that a trade-mark infringer is liable as a trustee for profits accruing from his illegal acts, even though the owner of the mark was not doing business in the consuming market where the infringement occurred * * * Recovery is predicated upon the equitable principle of unjust enrichment, not the legal theory of provable damages. In the exercise of its discretion, the trial court may refuse to award profits of the infringer in unusual circumstances where the owner has abandoned the trade territory in which the profits were realized, and has shown no disposition to enter the field * * * But, no such unusual circumstances are presented here."

In view of the fact that the evidence shows an intentional effort to palm off goods as those of the plaintiff, the trial court awarded damages, but in view of the relative positions of the parties, refused to allocate all of defendant's profits as profits which would have accrued to plaintiff were it not for the wrongful acts of infringement and unfair competition. The award is justified as proper under the infringement of the trademark Posturepedic alone and appellant cannot be heard to complain that he received the advantage of an adjudication with respect to Golden Sleep also. Even had appellee perfected a cross-appeal as to the damages, we conceive no reason for disturbing the considered discretion of the trial judge.

Affirmed.