**J. R. WOOD AND SONS, INC., Plaintiff-Appellee,**

v.

**REESE JEWELRY CORPORATION, Defendant-Appellant.**

**No. 209, Docket 25383.**

United States Court of Appeals
Second Circuit.

Argued Feb. 29, 1960.

Decided May 5, 1960.

See also 19 F.R.D. 391.

Robert E. Burns, New York City, for appellant.

Kennard N. Ware, Philadelphia, Pa. (Margaret W. Smith and Howson & Howson, New York City, on the brief), for appellee.

Before CLARK, MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff, J. R. Wood & Sons Inc., a manufacturer of wedding, engagement and other diamond rings, commenced a trademark infringement suit against Reese Jewelry Corporation, a manufacturer of the same type of rings, claiming that plaintiff's trademark *"Artcarved"* was infringed by defendant's mark "Art ♦ Crest." Although the trial court found that there was "no substantial evidence of actual confusion or of damage to plaintiff's business" ; that "there is no evidence that defendant's breach was wilful or intentional"; and that "defendant in good faith thought its mark was not infringing"; nevertheless the court permanently enjoined defendant from using "Art ♦ Crest." The court decreed, however, that "damages are not warranted and plaintiff shall not

have an accounting for damages." Defendant appeals.

The statute (15 U.S.C.A. § 1114(1), in substance, imposes liability thereunder if any person uses a colorable imitation of any registered mark, which use "is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods * * *"

Plaintiff since 1941 has used the registered trademark *"Artcarved"* in advertising its wedding, engagement and diamond rings. This name is also stamped on the inside of each ring. Defendant in 1948 commenced using a mark "Wedding Bells" on its rings. Later and in 1955 it used a mark "Art ♦ Crest by Wedding Bells" and stamped the words "Art ♦ Crest by W. B." on the inside of the ring. The infringement action was instituted in 1956. The trial court directed itself to the basic issue of "whether the ordinarily prudent purchaser is likely to mistake defendant's mark for plaintiff's mark." Although unfair competition was charged there was no evidence of customer confusion or palming off practices, and no judgment was entered with respect thereto.

The issue here can be narrowed further by rejecting for purposes of this appeal appellant's argument that its trademark is really "Art ♦ Crest by Wedding Bells" instead of "Art ♦

Crest." Therefore, the marks to be compared for likelihood of confusion are *"Artcarved"* and "Art ♦ Crest."

At the outset both appellant and appellee seek to set the scope of appellate review. Appellant argues that the Court of Appeals is in as good a position as the trial judge to determine likelihood of confusion (Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 2 Cir., 1952, 199 F.2d 602, certiorari denied 1953, 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345; Eastern Wine Corp. v. Winslow-Warren Ltd., 2 Cir., 1943, 137 F.2d 955, certiorari denied 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452). Appellee contends that F.R.Civ. P. Rule 52(a), 28 U.S.C.A. gives finality to the trial court's finding of likelihood of confusion "unless clearly erroneous."

The decision as to infringement must, of necessity, be based primarily upon a comparison of the marks. In the absence of other determinative evidence, a question of law or at best a mixed question of law and fact is presented as to which appellate review is not foreclosed. A far more difficult problem is posed in seeking any standard for evaluating "likelihood of confusion." The large number of decisions, some decreeing infringement,[1] others non-infringement[2] do not tend to reveal any dogmatic principle which can be dogmatically applied.

1. *For example:*
Spice Islands Co. v. Spice Land Products, Inc., 2 Cir., 1959, 262 F.2d 356 ("Spice Land" in contrast to "Spice Islands").
Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 1927, 18 F.2d 774 ("Cuticlean" in contrast to "Cutex").
Gehl v. Hebe Co., 7 Cir., 1921, 276 F. 271 ("Meje" in contrast to "Hebe").
Nu-Enamel Corp. v. Armstrong Paint & Varnish Works, 7 Cir., 1938, 95 F.2d 448 ("Nu-Enamel" in contrast to "Nu-Beauty Enamel").

2. *For example:*
Upjohn Co. v. Schwartz, 2 Cir., 1957, 246 F.2d 254 ("Syrocal" in contrast to "Cheracol").
Pro-phy-lac-tic Brush Co. v. Jordan Marsh Co., 1 Cir., 1948, 165 F.2d 549 ("Jewelite" in contrast to "Gemlite").

Rytex Co. v. Ryan, 7 Cir., 1942, 126 F. 2d 952 ("Rytex" in contrast to "Rynart").
Feil Co. v. John E. Robbins Co., 7 Cir., 1915, 220 F. 650 ("Sal-Vet" in contrast to "Sal Tone").
John Morrell & Co. v. Doyle, 7 Cir., 1938, 97 F.2d 232 ("Red Heart" in contrast to "Strong Heart").
Steem-Electric Corp. v. Herzfeld-Phillipson Co., 7 Cir., 1940, 118 F.2d 122 ("Steem-O-Matic" in contrast to "Steem-Electric").
L. J. Mueller Furnace Co. v. United Conditioning Corp., 1955, 222 F.2d 755, 42 CCPA 932 ("Climatrol" in contrast to "Clime-matic").
Thomas Kerfoot & Co. v. Louis K. Liggett Co., 1 Cir., 1933, 67 F.2d 214 ("Vapure" in contrast to "Vapex").

In Maternally Yours, Inc. v. Your Maternity Shop, Inc., 2 Cir., 1956, 234 F.2d 538, this court stated various factors which should be weighed in an endeavor to determine likelihood of confusion (See also Restatement of Torts § 729). Although in law the balance is never as accurate as on a chemist's scale, nevertheless this method of weighing relevant elements may well establish the equities by a sufficient preponderance.

Of the fields for inquiry there mentioned, intent to palm off, difference in geographic sales area, and actual confusion can be eliminated. There remain for consideration the degree of similarity in appearance, the nature of the words of syllables used and the degree of care which a prospective purchaser might be expected to exercise in purchasing the merchandise to which the marks apply.

"Artcarved" and "Art ◆ Crest" both use as a first syllable a word in common usage, i. e., "art." Trademarks containing a word in the public domain are said to be less "confusingly similar if they resemble each other only by the inclusion of a word which is in the public domain." See Goldring, Inc. v. Town-Moor, Inc., 1954, 228 F.2d 254, 255, 43 CCPA 740; Sears, Roebuck & Co. v. Hofman, Cust. & Pat.App.1958, 258 F.2d 953; Lauritzen & Co., Inc. v. Borden Co., 1956, 239 F.2d 405, 44 CCPA 720.

Appellee then dissects each mark by pointing out that the next letter of its word is "c" and that "C" is likewise the first letter of "Crest." Close similarity of the number of letters in "carved" and "Crest" is also stressed. Such analysis is too strained. Visually and phonetically the two marks should not be susceptible of confusion. To grant to appellee the protection sought would bestow upon it a virtual monopoly of any word commencing with "art." See Warner Bros. Co. v. Jantzen Inc., 2 Cir., 1957, 249 F.2d 353; Eastern Wine Corp. v. Winslow-Warren Ltd., supra. Such a conclusion would also have to carry the assumption that the purchasing public would believe that appellee is the source of origin of all rings advertised under, or bearing, a name so formed.

■ The district court properly selected the "ordinarily prudent purchaser" as the subject for protection against deception or confusion. But a prudent purchaser of what? Obviously, of wedding and diamond rings and not of general merchandise. The purchaser of a diamond ring, particularly of a wedding or engagement ring, will be most discriminating in his purchase, and make it carefully and deliberately. See Sleepmaster Products Co. v. American Auto-Felt Corp., 1957, 241 F.2d 738, 44 CCPA 784. The desire to please the recipient of the purchase, the importance of the occasion (engagement or wedding), the rather large cost, and the hoped-for permanence of the purchase, all combine to make a shopping trip for a diamond ring a memorable event for most people. If the advertising copy of "Artcarved" appeals sufficiently to the prospective purchaser, he may ask for the product by name at a retail store. If "Art ◆ Crest" is better remembered, the purchaser may ask for it. The two words are sufficiently different in pronunciation and meaning not to be confused if the purchaser is interested in a name. Usually such purchases are made after a careful examination of the style, size, quality and price of the selection offered by the retail jeweler. Brand name probably plays a rather unimportant part in any such purchase but where it does the name is likely to be remembered, thus reducing to a minimum any likelihood of confusion. Nor is "good will" in its commonly accepted meaning a consideration because at least as to engagement and wedding rings, it is not to be expected that the purchaser, pleased with his initial purchase, will return frequently for the same brand name.

Considering the various relevant factors in addition to the lack of similarity of the trademarks, the likelihood of confusion is insufficient to sustain a finding of infringement.

The judgment is reversed except insofar as it found plaintiff's trademark valid and not abandoned and dismissed defendant's counterclaim.

Reversed in part.

FRIENDLY, Circuit Judge (dissenting).

When middle-aged judges are obliged to determine the "likelihood of confusion" in the purchase of engagement and wedding rings by youthful swains not enjoying our advantage of knowing the answer in advance, I should suppose the most resolute mind must entertain some doubts. I prefer to resolve mine in favor of a plaintiff who has spent money and effort in exploiting its mark for nearly a score of years rather than of a defendant who, with the world of possible names before him, has chosen to inch as close to the plaintiff's mark as he believes he safely can, even if he has done this in a "good faith" belief that he has succeeded.

The plaintiff here has been selling engagement and wedding rings since 1850. It commenced using "Artcarved" on rings in 1941, registered that mark in 1942, and has used the mark widely, continuously and successfully ever since. "Artcarved" is the first or second most widely advertised trademark for wedding and engagement rings in the country. In November 1949 plaintiff began to use the mark "Woodcrest" on a secondary line. In 1950 it registered "Woodcrest" and commenced to use the combined mark "Artcarved Woodcrest." Between 1954 and 1957 plaintiff discontinued manufacturing or advertising rings marked "Artcarved Woodcrest" or "Woodcrest" but made sales of products so marked from stock. In 1957 plaintiff resumed manufacturing and advertising rings under the mark "Woodcrest." From 1941 through 1958 plaintiff expended $5,659,000 in advertising its marks.

Appellant began to use "Art ♦ Crest" in 1955. When this action was begun, appellant stamped on the inside of its rings these words and no others. The addition of "by W. B." came three months later.

Judge Goodrich said in Q-Tips, Inc. v. Johnson & Johnson, 3 Cir., 206 F.2d 144, 145, certiorari denied 1953, 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 (Q-Tips and Johnson's Cotton Tips):

"It is worth pointing out, at the start of our discussion, that we are in a field where the tendency of the law 'has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade. The tendency still persists.' Restatement, Torts, Volume III, page 540. In any situation where the law is in the growing stage it is not to be expected that the advance in all courts will be simultaneous."

Until recently this court has been at least in pace with the advance, if not, indeed, in the van. See, e. g., Industrial Rayon Corp. v. Dutchess Underwear Corp., 2 Cir., 1937, 92 F.2d 33, certiorari denied 1938, 303 U.S. 640, 58 S.Ct. 610, 82 L.Ed. 1100 (Spun-lo and Sunglo); George W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F.2d 536, certiorari denied 1944, 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606 (Tangee and Zande); LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115, certiorari denied 1946, 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663 (LaTouraine and Lorraine); Spice Islands Co. v. Spice Land Products, Inc., 2 Cir., 1959, 262 F.2d 356 (Spice Islands and Spice Land). Granted that the word "art" is in the public domain, so also are "tips," and "spice," as well as "flash," Western Oil Refining Co. v. Jones, 6 Cir., 1928, 27 F.2d 205, "new" (even when spelled "nu") Nu-Enamel Corp. v. Armstrong Paint & Varnish Works, 7 Cir., 1938, 95 F.2d 448, and countless others that have received protection. "Art" does not have the extensive use as a mark for rings that was held to deprive "Chateau" of protection for wines, Eastern Wine Corp. v. Winslow-Warren, Ltd., 2 Cir., 137 F.2d 955,

certiorari denied 1943, 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452; indeed, there was no evidence that anyone had used the word "art" as a mark for rings prior to plaintiff's registration. The denial of trademark protection by a divided court in Warner Bros. Co. v. Jantzen, Inc., 2 Cir., 1957, 249 F.2d 353, 354 (A'Lure and Curvallure), is distinguishable on the basis that there "defendant did not use its coined word alone, but always joined it with its own widely known trademark consisting of the name 'Jantzen' and a representation of a diving girl." And if Warner Bros. Co. v. Jantzen, Inc. was an unwarranted departure, as Chief Judge Lumbard thought, we should rejoin the trend that the Restatement and Judge Goodrich foresaw. How right they were in discerning the trend is shown by the following decisions granting protection that have appeared in the three months since this case was argued: Rex Shoe Co. v. Juvenile Shoe Corp., Cust. & Pat.App.1959, 273 F.2d 179 (Footthrills and Thrill-mates); Friedman v. Sealy, Inc., 10 Cir., 1959, 274 F.2d 255 (Posturepedic and Golden Sleep against Proper-Pedic and "The Golden Fleece"); In re Beaunit Mills, Inc., Cust. & Pat.App.1959, 274 F.2d 436 (Cultured Cotton and Cultured Bemberg); S. E. Mighton Co. v. La Pryor Milling Co., Cust. & Pat.App.1960, 274 F.2d 676 (Doggie Dinner and Dog-E-Dote). In the Friedman case, dealing with mattresses and springs, Judge Lewis answered my brothers' argument based on the importance and infrequency of purchase, in language most persuasive to me, 274 F.2d at pages 261–262:

"This argument has its alternate side in that the construction of sleep equipment is not a matter of common knowledge and the consumer buys infrequently. He is thus forced to rely on his memory, more than his inspection, for the recall of names, guarantees, and endorsements. Under such circumstances, confusion can easily arise."

I would affirm.