The **PRESIDENT AND TRUSTEES OF COLBY COLLEGE**, a corporation incorporated under the laws of the State of Maine and having its principal place of business in the State of Maine,

v.

**COLBY COLLEGE–NEW HAMPSHIRE,** a corporation incorporated under the laws of the State of New Hampshire and having its principal place of business in the State of New Hampshire.

**Civ. A. No. 73–102.**

United States District Court,
D. New Hampshire.

May 6, 1974.

Lawrence E. Spellman, Sulloway, Hollis, Godfrey & Soden, Concord, N. H., Vincent L. McKusick, Pierce, Atwood, Scribner, Allen & McKusick, Portland, Maine, for plaintiff.

F. Graham McSwiney, McSwiney & Jones, New London, N. H., for defendant.

## OPINION

BOWNES, District Judge.

In this action plaintiff, Colby College, seeks a permanent injunction against the defendant's use of the name Colby College-New Hampshire. Plaintiff's action is based on alleged infringement of a common-law trade name, NH RSA 350–A:11, and violation of New Hampshire's antidilution statute, NH RSA 350–A:12. Diversity jurisdiction is based on 28 U.S.C. § 1332(a).

This is the second round in the battle between the two "Colbys." Plaintiff's motion for a preliminary injunction enjoining defendant from changing its name from Colby Junior College for Women to Colby College-New Hampshire on July 1, 1973, was denied on May 21, 1973, after a full day's hearing on May 11th. The evidence presented at that hearing is, of course, part of the record of this case, and the opinion rendered on June 1, 1973, is still pertinent and applicable and should be read in conjunction with this opinion. President and Trustees of Colby College v. Colby Junior College for Women, 359 F.Supp. 571 (D. N.H.1973).

At the outset, I reaffirm my prior rulings that it is the law of New Hamp-

shire that applies and that the plaintiff has not been guilty of laches. There seems little point in restating the history of the use of the name "Colby" and "Colby College" by both institutions. *See* prior Opinion. The issue is whether the plaintiff has an exclusive right to the mark "Colby College" and can prohibit the use of the name "Colby College-New Hampshire" by the defendant.

■■■ Before reaching the merits of this case, a preliminary issue must be resolved. Plaintiff contends that, in addition to trade name infringement, defendant has also violated NH RSA 350–A:12, New Hampshire's antidilution statute:

> *Injury to Business Reputation; Dilution.* Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

I rule that the antidilution statute is not applicable. Historically, trademark and trade name protection was extended only in cases where

> one of two competitors marketing the same kind of goods denominates his goods by a designation like the other's trademark or trade name. Restatement of Torts (Third) § 730, Comment a.

Although the ambit of protection has been greatly expanded, it has not been extended to protection against use of a similar mark on totally dissimilar goods. Restatement of Torts (Third) § 730, Comment b.

The "dilution doctrine" was promulgated to fill the void created by this lack of protection, and it

> operates to extend the protection of the trade-mark law to the situation presented when similar marks are used on dissimilar goods . . . .

> [I]t has no application when the question is whether the marks being used on goods of substantially the same descriptive properties are similar enough to cause confusion in the minds of customers with respect to the source of the goods. Pro-Phy-Lac-Tic Brush Co. v. Jordan Marsh Co., 165 F.2d 549, 553 (1st Cir. 1948).

Since the New Hampshire statutory scheme includes specific provisions on trademark and trade name protection, *see* NH RSA 349 and 350–A:11, I assume that the applicability of the antidilution provision is restricted in accordance with the theory that underlies it. *See generally* Walter J. Derenberg, The Problem of Trademark Dilution and Antidilution Statutes, 44 Calif.L.Rev. 439 (1956). The fact that the trade name statute and both the older and recently enacted trademark statutes all contained provisions purporting to leave the common-law intact supports this position. NH RSA 349:11, 350:15, and 350–A:14 (1973 Supp.). *See also* Blastos v. Humphrey, 112 N.H. 352, 296 A.2d 918 (1972).

## A. THE MERITS

■■ In order to prevail, plaintiff must show that it has a valid common-law trade name and that defendant's new appellation, Colby College-New Hampshire, infringes on it. Since the name Colby College is a combination of a personal name and a descriptive or generic word, it is not entitled to trade name status unless it has acquired a "secondary meaning." *See generally* S. Oppenheim, Unfair Trade Practices (1965) at 43, 65–80. A trade name attains secondary meaning if it is "broadly known to the public as denoting a product of certain origin." 52 Am.Jur. Trademarks, Tradenames, and Trade Practices § 73 (1944). As the court in G. & C. Merriam Co. v. Saalfield, 198 F. 369, 373 (6th Cir. 1912), put it:

> [The secondary meaning theory] contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation

with reference to an article on the market, because geographically or otherwise descriptive, might nevertheless have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase had come to mean that the article was his product; in other words, had come to be, to them, his trade-mark.

*See also* Restatement of Torts (Third) § 716, Comment b.

 The test is easy enough to state, but difficult to apply. One of the difficulties is that plaintiff's use of the mark has not been exclusive. *See* prior Opinion. Although defendant has never legally adopted the name Colby College, the historical development of both names and the evidence submitted indicates that defendant has, at times, been referred to, both formally and informally, as Colby College. *See* Complaint, Exhibit D; *see also* Restatement of Torts (Third) § 717, Comment on Subsection (2) and § 733. However, plaintiff has introduced evidence that the name Colby College has attained secondary meaning for it in two ways. In his deposition, Dr. Armstrong, President of Middlebury College, indicated that college administrators identify the name Colby College with plaintiff. Plaintiff's Exhibit 48. I accept this testimony, but it does not establish that the identity is "broadly known to the public."

Plaintiff's main thrust in an attempt to prove secondary meaning is a survey done by the Becker Research Corporation. Plaintiff's Exhibit 38. Questions 3, 4, and 5 are the heart of the survey as far as secondary meaning is concerned. These questions read as follows:

Question 3: "I noticed that you have heard of Colby College; can you tell me where Colby College is located?" (Interviewer: If just Maine, ask "What town is it located in?")

Question 4: "As you understand it, is Colby College a full 4 year college, a 2 year college or what?"

Question 5: "Please tell me if Colby College is a school for men only, a school for women only, or is it coeducational, that is a school for both men and women?"

Plaintiff's Exhibit 38, page 9.

Question 3 attempts to ascertain which college the public associates with the name "Colby College." Questions 4 and 5 supplement this inquiry. The questions, therefore, are directed toward proving that Colby College has achieved a secondary meaning that is exclusively associated with the plaintiff. An analysis of the responses, which appear at page 9 of Plaintiff's Exhibit 38, is necessary. The responses to Question 3 show that, while four out of five of the residents of Maine have heard of Colby College and think of it as the plaintiff, only two out of five make the same association in New Hampshire and Metropolitan Boston. As might be expected, more people in New Hampshire and Boston than in Maine think of Colby College as the defendant school. In fact, eighteen percent or one out of five of the people in New Hampshire equate Colby College with the defendant. Moreover, over one-quarter of the people in New Hampshire and the Metropolitan Boston area, and over ten percent of those in Maine do not know where Colby College is located at all. It is questionable whether the response to Question 3 shows that the name "Colby College" is generally known to the public as the plaintiff.

Questions 4 and 5 tend to show that the name "Colby College" is associated with the characteristics of the plaintiff more than with the characteristics of the defendant. While it may be implied from this that substantially one-half of those interviewed in Maine and New Hampshire really have the plaintiff in mind when they think of "Colby College," the contrary inference that these people are merely confused about the na-

ture and scope of the defendant's educational curriculum is equally plausible.

Although the initial impact of the survey is impressive, analysis reveals some vital defects. No reference tables were provided from which the confidence level of the validity of the survey could be determined. Five hundred people were interviewed from each area surveyed: Metropolitan Boston, Maine, and New Hampshire. This means that the survey professes to reflect the views of a cross-section of at least two million people on the basis of fifteen hundred interviews. There must be a margin of error for such a sampling, and it should be given in the survey.

Another statistic casts a shadow on the overall validity of the survey. According to the survey, *see* Exhibit 38, Question 1, page 7, the recognition factor of Colby College, Dartmouth College, and Bowdoin College is about the same among those polled in the Metropolitan Boston area. While I am not an alumnus of Dartmouth College, it is hard to accept the conclusion of the survey that it is not much better known than either Colby or Bowdoin. Ever since Daniel Webster uttered his immortal words before the United States Supreme Court, Dartmouth College has been one of the best known private colleges in the country. It competes regularly in football, basketball, and baseball with Harvard and Holy Cross, both of which have a significant number of alumni in the Boston area.

Although the survey does tend to show that people in Maine, New Hampshire, and the Metropolitan Boston area associate the name "Colby College" with the plaintiff more than they do with the defendant, it does not establish that the name "Colby College" has achieved a secondary meaning exclusively associated with the plaintiff.

Even if I assume that the plaintiff has met the secondary meaning test, it must still prove that defendant's name, Colby College-New Hampshire, infringes on its mark. To prevail in this area, plaintiff must show, *inter alia,* that there is a likelihood of substantial confusion between its mark and defendant's name. It has been said that:

> At the heart of many trademark and trade name cases is the question whether the defendant's use of a mark is likely to confuse or deceive others who purchase his goods or services or otherwise rely upon the mark. *Oppenheim, supra,* at 46.

*See* Restatement of Torts (Third) § 717, Comment b.

The question of whether or not substantial confusion exists is one of fact, and it has been dealt with in my prior opinion. Although both parties have introduced considerable proof, including expert testimony, on the issue of confusion, I adhere to my earlier ruling that the likelihood of confusion is not substantial. It is clear, first of all, that defendant has not attempted to pass itself off as, or trade on, plaintiff's name in the traditional sense. *See* prior Opinion. Moreover, although Colby College-New Hampshire has, to a limited extent, diversified the educational opportunities at the school, the two colleges are still markedly dissimilar and do not compete in a meaningful sense for students from the same pool of applicants. *See* prior Opinion. Prospective students and faculty who are seriously interested in becoming affiliated with either institution, even if initially confused, will certainly not be misled for long given the importance of post secondary education or employment and the degree of care likely to be exercised in making a decision of this nature.

While there was a suggestion in the questioning that Colby College-New Hampshire may in the future try to take advantage of Colby College's fine reputation in an attempt to build up its student body, there is absolutely no evidence that this is occurring or that the change in name by the defendant was intended for this purpose. *See* prior Opinion. Dr. Vaccaro, President of Colby College-New Hampshire, made it

clear that his institution is still primarily a girls' school with a curriculum that is entirely different from that of Colby College. No attempt is being made to recruit male students; they are, in fact, discouraged. Testimony of Mr. Aisner. The type of student that Colby College-New Hampshire is now seeking has nothing in common with those seeking admission to Colby College. *See* prior Opinion. Although both schools draw their students from the same geographical areas, there is nothing in the evidence to suggest that a student seriously seeking admission to Colby College would continue in his errant ways after reading the brochures and literature put out by Colby College-New Hampshire.

One of the overriding fears of the plaintiff is that prospective donors will be confused about the schools and donate to the New Hampshire school because of mistaken identity. But this was a problem before the name of the defendant was changed from Colby Junior College for Women to Colby College-New Hampshire. *See* Testimony of Dr. Turner at First Hearing wherein he testified that in approaching "Friends of Colby," he had to first explain to them that he represented the Colby from Maine. Dr. Strider testified that it was extremely unlikely that a corporation or foundation, which are the sources of the most significant and dependable contributions, would make a mistake as to the identity of the two schools. Other important contributors, such as alumni or their relatives, are sure to have sufficient familiarity with the object of their beneficence so that confusion is highly unlikely. I find that the change in name is not going to have an adverse effect on contributions to Colby College.

■ The inescapable conclusion from all of the evidence is that the source of the confusion is the word "Colby." Although the Maine school has been using the name Colby College since 1899, this does not give it an exclusive and sole right to the name "Colby." Indeed, the plaintiff agrees that the defendant has a right to use the name "Colby," but objects to the use of the word "College" immediately following it. Testimony of Dr. Strider. In this regard, it is important to emphasize what I noted in my prior opinion, and that is, that the word "College" is a generic term designating an institution of higher learning. Moreover, the New Hampshire school started using the name "Colby" in 1878, and from 1933 on it used the name Colby Junior College for Women. Over the years, both schools have been referred to as "Colby," not only by those who know and love them, but also by the press and the public; and therein lie the seeds of confusion. *See* Defendant's Exhibit AA. There is no possible way that a court can prevent newspapers and alumni from referring to the respective institutions as just plain "Colby." I take judicial notice of the fact that colleges and universities are referred to by their first names and that dropping of the generic term "College" and/or "University" is well nigh universal.

In summary, there has been confusion for a number of years as to the identity and location of both schools. Since the preliminary injunction hearing, plaintiff has, of course, been astute to locate and document all instances of confusion. However, evidence of increased or increasing confusion after defendant's name change, is, at best, equivocal. The academic world is replete with examples of colleges and universities with the same or similar name. Defendant's Exhibit E. I agree with the testimony of Dr. Webster that the plaintiff will not suffer any more confusion with the name Colby College-New Hampshire than it did with the name Colby Junior College for Women. I find that the plaintiff has not proven the likelihood of substantial confusion by a preponderance of the evidence.

## B. POLICY CONSIDERATIONS

The issues of secondary meaning and trade name infringement are factual questions which always involve difficult problems of proof. In the typical commercial dispute, these issues can be re-

lated to concrete economic consequences. Here, however, the interests sought to be protected are not principally economic; they are, rather, somewhat esoteric. A critical dimension to this case is plaintiff's desire to protect the fine reputation and image of what is undoubtedly one of the finest small coeducational liberal arts colleges in New England, if not the entire country. In fact, I detect a note of hurt pride on the part of the plaintiff. It does not want to go on being confused with a school which is not only different from it, but also definitely inferior from an academic point of view. For these reasons, as well as others, this case calls for a difficult decision. Historically, both institutions can lay legitimate claim to the name "Colby." Moreover, each school has used "Colby" in its name for nearly a century. During this time, and during the more than forty years when plaintiff was known as Colby College and defendant known as Colby Junior College for Women, neither institution found reason to be concerned, although some confusion admittedly occurred. *See* Restatement of Torts (Third) § 733, Comment· b. Recently, defendant has decided to enlarge the scope of its operation. Although defendant can by no means now be described as a coeducational four-year liberal arts college, offering traditional baccalaureate degrees, it has, nonetheless, moved somewhat away from its image as a junior college for women only. Herein lies the problem. If one eliminates the "Junior" and "for Women" from Colby Junior College for Women, he is left with Colby College. From a strictly logical point of view, Colby College-New Hampshire seems a likely name to properly evoke the new image defendant seeks to portray. Despite this logic, the question remains: Does the use of Colby College-New Hampshire infringe on plaintiff's trade name?

■■■ Normally, the second user of a descriptive-personal trade name, or close facsimile, which has acquired secondary meaning can avoid infringement if the mark is "accompanied by a reasonable effort to avoid deceiving prospective customers as to the source." Restatement of Torts (Third) § 741, Comment j. Assuming that defendant does have the right to use the name Colby College, the inquiry then becomes whether the addition of "-New Hampshire" is a reasonable effort to give the public fair warning about the possible confusion. As a practical matter, this inquiry leads only to an equally difficult decision. On the one hand, defendant knew full well that the name Colby College was in use and that the current user would object to its use of that name. Moreover, as plaintiff points out, defendant had an entire Colbyonym from which to choose. Several of these choices, such as Joseph Colby College or Susan Colby College, would be as historically and descriptively accurate as Colby College-New Hampshire, and also would serve to more clearly distinguish the two schools. Plaintiff's Exhibit 12 at 86. In addition, plaintiff had indicated an intent not to attempt to enjoin such options. Testimony of Dr. Strider. On the other hand, the name ultimately chosen by defendant is, as pointed out earlier, a logical choice. Moreover, it seeks to distinguish itself from the plaintiff institution on the basis of location, a characteristic deemed important even by plaintiff's survey. *See* Plaintiff's Exhibit 38, Question 3. In short, while defendant could have selected a Colbyonym which might have more easily distinguished it from plaintiff, I cannot say that the choice it did make was not reasonably calculated to apprise the public of its lack of connection with the plaintiff.

■■ Although I have already ruled that plaintiff has not sustained its burden of proof on the secondary meaning and infringement issues, I examine the policies underlying the protection of marks which have obtained secondary meaning to see how those policies are implicated in this case. *See generally*

Richard H. Stern and Joel E. Hoffman, *Public Inquiry and the Public Interest: Secondary Meaning in the Law of Unfair Competition*, 110 U.Pa.L.Rev. 935 (1962); and *cf.* Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607 (2d Cir. 1960). Basically, the law of trademarks and trade names seeks to set standards for the determination of when a particular mark or name should be withdrawn from the public domain and subjected to control by its owner. In dealing with names that have acquired trade name status because of secondary meaning, the question of whether the public is deceived or confused becomes important. This is so because secondary meaning trade names, by definition, have descriptive, personal, or generic qualities inherently useful to the public. Here, there are important reasons for keeping the trade name "Colby College" in the public domain. Unlike the typical infringement situation, where a second user may select a mark similar to the owner's merely because it is generic or descriptive of the product in question, the defendant's selection here has historical significance and is important to the school's image and identity. "Colby" has been part of the defendant's name for almost a century. A college's identity and image are critical to its survival and growth. This fact was recognized and accepted by plaintiff's President, Dr. Strider. In these days of sharply increasing costs and declining college applications, such identity is even more critical. In this case, even if the mark "Colby College" has obtained a secondary meaning for the plaintiff, the association is not strong. In effect, the word "Colby," a name by which both schools are, and for sometime have been, informally identified, has acquired a secondary meaning for both schools.

 Balancing the "free competition" policy of keeping useful words in the public domain are: (1) the public's right not to be confused or deceived (or what might loosely be termed the public's right to know) and (2) plaintiff's right to control over a mark it has developed. However, these policies are not endangered by defendant's use of the name Colby College-New Hampshire. Although both institutions draw from the same "using public," i. e., high school graduates, they do not, as has been pointed out, compete for the same caliber or type of student. In those situations in which confusion might occur, it can be fairly said that, unlike the choice of a soup or detergent, the importance of decisions facing persons seeking to avail themselves of the educational opportunities or otherwise support or associate themselves with a college, will insure serious enough inquiry to correct any initial mistakes. In addition, plaintiff's "claim" to the name "Colby College" is weak. Certainly, plaintiff's mark has not attained the degree of secondary meaning acquired by Ford Motor Company or Coca-Cola Bottling Company, let alone such educational institutions as Harvard or Yale.

 For the foregoing reasons, I find that the plaintiff, Colby College, has not proven that it has a valid common-law trade name nor that the defendant's new name, Colby College-New Hampshire, infringes on it; and, in any event, the policy considerations which pertain here militate against enjoining defendant from using the name Colby College-New Hampshire. Plaintiff's prayer for a permanent injunction is denied.

Judgment for the defendant.

So ordered.